[No. C065219. Third Dist. Aug. 15, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDAL SCOTT KEISTER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III, IV, V and VI of the Discussion.

444

COUNSEL

Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Stephen G. Herndon, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**ROBIE, J.**—Over a two-year period, defendant Randal Scott Keister molested K., the teenage daughter of his girlfriend, and left sexually explicit writings and objects in K.'s bedroom. A jury found him guilty of four counts of committing a lewd act on a child, one count of battery, and eight counts of contacting or communicating with a minor with the intent to commit an enumerated sex offense (Pen. Code,[1] § 288.3, subd. (a)).

Section 288.3, subdivision (a) reads as follows: "Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section 207, 209, 261, 264.1, 273a, 286, 288, 288a, 288.2, 289, 311.1, 311.2, 311.4 or 311.11 involving the minor shall be punished by imprisonment in the state prison for the term prescribed for an attempt to commit the intended offense."

Defendant appeals, raising five constitutional challenges to section 288.3 (including one to the proposition that contains the section) and an argument regarding what he believes is a lesser included offense of section 288.3. Finding no merit in these contentions, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

K. was 15 years old at trial. Since the time K. was in sixth grade, defendant had been the boyfriend of K.'s mother. They all lived together in an apartment in Carmichael, and K.'s grandmother lived a "couple of doors down."

The first time defendant molested K. was in 2006 when she was 12 and in sixth grade. She and defendant were home alone watching a movie in her

[1] Further section references are to the Penal Code. We will sometimes refer to the section 288.3 offenses as the luring counts.

mother's bed. He started giving K. a "massage" that began on her back and finished on her "butt." She was "[s]urprised" and went to her bedroom. She was "confused" and did not tell her mother.

The last time defendant molested K. was in summer 2009 when she was 14 and transitioning between eighth and ninth grade. It was nighttime, and she had fallen asleep on the couch in the living room. She awoke to defendant touching her vagina with his fingers. She told him to " '[s]top' " and went into her bedroom.

In between these incidents were several more. Before she turned 14, defendant touched her "butt" while she was playing "Guitar Hero." When she was 13 and at her grandmother's apartment, defendant "grabbed [her] [buttocks]" while she was "standing next to [him]" while he was at a computer. Another time at K.'s grandmother's apartment, defendant "grabb[ed] [K.'s] butt" when K. was sitting in his lap while he was on the computer playing "[M]y World of Warcraft." K. "stood up and turned away."

In addition to molesting K., defendant left sexually explicit writings and objects in K.'s bedroom. He left her a book entitled Nervous, which contained numerous passages describing sex acts, along with a note saying, "I like this part." He left her a vibrator. He left her numerous letters and notes.[2] K.'s mother found one of these letters and asked her about it. That was the first time K. talked "about this." A few days later, K. told her best

---

[2] There was a handwritten letter beginning with, "Once again I caught her doing . . . ." It described defendant's sexual fantasies with K., stating they "probably w[ould] never become reality" because K. was "still mad at [him] for kissing her pussy through her pajamas, the other night while she slept." The letter continued that defendant was "exceptionally frustrat[ed]" because "her mother and [defendant] rarely ha[d] sex anymore."

There was a handwritten letter beginning with, "Summer is coming to a close," which stated defendant was "especially sorry for the pressure [he] put on [K.] trying to force [her] to do something [she] so obviously w[as]n't willing to do."

There was a handwritten letter beginning with, "I need to know in just one word if you would give yourself to me tonite . . . ." It explained defendant had "toys of all sorts" and "protection so we have no worries."

There was a handwritten letter beginning with, "trying to work my massively swollen dick . . . ." It described defendant's sexual fantasies with K., but then "sadly . . . acknowledge[d] . . . that this sweet, passionate dream will never be, simply because [K.] will never amass the courage to let [him] fuck her."

There was a typewritten poem entitled, "An Angel In The Dark." It included a sexually graphic picture.

There was a handwritten poem in the form of a note beginning, "[K.], You are as beautiful as the violet dawn."

There was a handwritten note on an index card beginning, "Fuck she's so damned sexxy [sic]." It stated that defendant "fantasize[d] about [K.] constantly ever since [he] saw her gorgeous shaved pussy, and her beautiful body completely exposed to [his] lustful gaze."

friend. The mother of K.'s best friend eventually called "C.P.S." (child protective services) after K.'s mother said she "wanted to deal with the situation herself."

Both K. and defendant were interviewed by police. K. told police about specific instances when defendant had molested her. Defendant told police his involvement with K. was a "misplaced attraction thing," owing to "loneliness" because K.'s mother worked nights. He knew what he did was "wrong." He described specific instances when he had molested K., including one time at her grandmother's apartment. At the suggestion of police, defendant wrote K. an apology letter. He wrote what he did was "unacceptable." He was "sorry [he] put [K.] in a no win situation and made [her] feel trapped and alone."

Defendant presented no witnesses at trial. In closing argument, defense counsel conceded defendant's guilt with respect to two lewd acts (touching of K.'s buttocks while watching the movie and touching her vagina) and all the luring counts with the exception of the one based on the book.

## DISCUSSION

### I

### *Constitutional Challenges to Section 288.3*

Defendant raises five constitutional challenges to section 288.3, including one to the proposition that contains the section. Specifically, he claims (1) section 288.3 unconstitutionally restricts the freedom to travel; (2) section 288.3 is void for vagueness; (3) section 288.3 improperly restricts free speech; (4) section 288.3 violates the equal protection clause; and (5) Proposition 83 that contains section 288.3 violates the single-subject rule. We address each argument in turn, finding merit in none.

### A

### *Freedom to Travel*

Defendant contends section 288.3 is unconstitutional because "it improperly restricts the freedom of movement of any person the state identifies as having a sexual attraction towards children." According to defendant, this improper restriction comes from the statute's failure to "require the intent to commit an immediate sex act." These arguments are unavailing.

■ "[T]he nature of our Federal Union and our constitutional concepts of personal liberty . . . require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." (*Shapiro v. Thompson* (1969) 394 U.S. 618, 629 [22 L.Ed.2d 600, 612, 89 S.Ct. 1322].)

■ Section 288.3 does not unconstitutionally restrict the right to travel because it does not "unreasonably burden or restrict . . . movement." (*Shapiro v. Thompson, supra,* 394 U.S. at p. 629 [22 L.Ed.2d at p. 612].) Rather, it burdens or restricts movement only to the extent that movement is contact or communication with a minor or an attempt to do so with the specific intent to commit an enumerated sex offense. (§ 288.3, subd. (a).) That restriction is reasonable because the statute which contains it is "one of many penal statutes by which 'the Legislature has evidenced a long-standing and consistent history of specifically protecting minors from sexual exploitation and predation.' " (*People v. Hsu* (2000) 82 Cal.App.4th 976, 988–989 [99 Cal.Rptr.2d 184].) That the statute does not require the intent to commit a sex act to be immediate is immaterial. Defendant has pointed to no constitutional requirement requiring the intent be imminent for the contact or communication to be punishable. In addressing a similar type of argument dealing with a challenge to a state "hate crime" statute, our Supreme Court rejected an argument that the federal Constitution always requires the threatened harm to be imminent for the threat to be constitutionally punishable. (*In re M.S.* (1995) 10 Cal.4th 698, 706, 711 [42 Cal.Rptr.2d 355, 896 P.2d 1365].)

For these reasons, defendant's challenge to section 288.3 as an unreasonable restriction on the freedom to travel lacks merit.

B

*Vagueness*

Defendant contends section 288.3 is void for vagueness because it "allows for the personal predilections of law enforcement officials to establish standards for what constitutes 'contact with a child' and how the required intent is shown." He claims that a glance, wink, or smile could suffice, as could "[w]alking by a child, riding on the same bus with a child, or standing next to a child in a line at the store."

■ The problem with defendant's examples is they do not address the issue of vagueness. "[T]he mere fact that close cases can be envisioned" does not "render[] a statute vague." (*United States v. Williams* (2008) 553 U.S. 285, 305, 306 [170 L.Ed.2d 650, 670, 128 S.Ct. 1830].) "Close cases can be

imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." (*Ibid.*)

In *Williams*, the Supreme Court rejected a vagueness challenge to a statute criminalizing the pandering and soliciting of child pornography. (*United States v. Williams, supra*, 553 U.S. at p. 306 [170 L.Ed.2d at p. 670].) The court explained, "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." (*Ibid.*)

There is no such indeterminacy here. The statute requires the defendant to contact or communicate with a minor or attempt to do so with the specific intent to commit an enumerated sex offense. (§ 288.3, subd. (a).) Those are questions of fact. Whether a defendant made the contact or communication and had the requisite intent are yes-or-no determinations, not subjective judgments. "To be sure, it may be difficult in some cases to determine whether these clear requirements have been met. 'But courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.' " (*United States v. Williams, supra*, 553 U.S. at p. 306 [170 L.Ed.2d at p. 671].)

For these reasons, defendant's vagueness challenge to section 288.3 lacks merit.

## C

### *Free Speech*

Defendant contends section 288.3 improperly restricts free speech. He claims the statute "effectively prohibits potential child molesters from communicating with children. If a person is sexually attracted towards children, he violates the statute anytime he communicates with a child because he has the intent to molest children if given the opportunity." Defendant is wrong on his factual assertion and on his legal conclusion.

His factual assertion—a person who is sexually attracted to children violates section 288.3 anytime he communicates with a child—is not true. The only time the communication is criminal is if it is motivated by a specific intent to commit an enumerated sex crime. (§ 288.3, subd. (a).)

While there is a limit on free speech to the extent that section 288.3 criminalizes otherwise protected communications with a minor, the statute

has been written in a way that does not unconstitutionally restrict protected speech. Before the statute is violated, the defendant must know or reasonably should have known the other person was a minor, have the specific intent to commit an enumerated sex offense, and then contact or communicate with that minor or attempt to do so. (§ 288.3, subd. (a).) Thus, without the unlawful sexual intent, the statute is not violated.

In this way, it is similar to another statute aimed at protecting minors from sexual exploitation, section 288.2, which prohibits distributing or exhibiting "harmful matter" to a minor, including by the Internet. Section 288.2 has been upheld in the face of a First Amendment challenge. (*People v. Hsu, supra*, 82 Cal.App.4th at pp. 988–989.) There, too, while there was a limitation on sending otherwise protected material, there was no constitutional problem with the statute because those limits were "on the conduct of those who would use otherwise protected speech to seduce minors." (*Hsu*, at p. 989.)

D

*Equal Protection*

Defendant contends section 288.3 violates the equal protection clause because it "singles out potential child molesters to impose upon them what is basically a thought crime," while not criminalizing potential thieves or muggers who "intend[] to commit a future theft or future assault." Again, defendant is wrong on his factual assertion and on his legal conclusion.

His factual assertion is wrong because section 288.3 does not create a thought crime. It requires the act of contacting or communicating with a minor or an attempt to do so coupled with the specific intent to commit an enumerated sex crime. (§ 288.3, subd. (a).)

His legal assertion is fundamentally wrong because a person who violates section 288.3 is not similarly situated to a potential thief or mugger. "The constitutional guaranty of equal protection of the laws means simply that persons similarly situated with respect to the purpose of the law must be similarly treated under the law. [Citations.] If persons are not similarly situated for purposes of the law, an equal protection claim fails at the threshold." (*People v. Buffington* (1999) 74 Cal.App.4th 1149, 1155 [88 Cal.Rptr.2d 696].) Those who violate section 288.3 are not similarly situated to those who are thinking about committing a theft or assault. Those who violate section 288.3 have communicated or contacted a minor or attempted to do so with the specific intent to commit an enumerated sex crime. The others identified by defendant have not.

E

*Single-subject Rule*

Defendant contends Proposition 83, which contains section 288.3, violates the California Constitution's single-subject rule, which states, "[a]n initiative measure embracing more than one subject may not be submitted to the electors or have any effect." (Cal. Const., art. II, § 8, subd. (d).)

■ An initiative measure does not violate the single-subject rule if its various provisions are " ' "reasonably related to a common theme or purpose." ' " (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 575 [117 Cal.Rptr.2d 168, 41 P.3d 3].) In *Manduley*, the California Supreme Court considered a claim that Proposition 21, titled the Gang Violence and Juvenile Crime Prevention Act of 1998, violated the single subject rule. (*Manduley*, at pp. 544–546.) As described by the court, Proposition 21 addressed three subjects: gang violence, the sentencing of repeat offenders, and juvenile crime. (*Manduley*, at p. 575.) The petitioners argued each subject was "distinct and unrelated to one another" and "although the subjects addressed by Proposition 21 might be related to the general goal of reducing crime, such a goal is too broad to satisfy the requirements of the single-subject rule." (*Manduley*, at p. 575.) The court disagreed, finding that "the purpose of the measure is narrower than that identified by petitioners. The general object of the initiative is to address the problem of violent crime committed by juveniles and gangs—not simply to reduce crime generally." (*Manduley*, at pp. 575–576.)

Here, the provisions of Proposition 83 were summarized for voters as follows: (1) "Increases penalties for violent and habitual sex offenders and child molesters"; (2) "Prohibits registered sex offenders from residing within 2,000 feet of any school or park"; (3) "Requires lifetime Global Positioning System monitoring of felony registered sex offenders"; (4) "Expands definition of a sexually violent predator"; and (5) "Changes current two-year involuntary civil commitment for a sexually violent predator . . . and subsequent ability of sexually violent predator to petition court for sexually violent predator's conditional release or unconditional discharge." (Voter Information Pamp., Gen. Elec. (Nov. 7, 2006) official title and summary of Prop. 83, p. 42.)

From this summary, the common purpose of the provisions of Proposition 83 is to protect Californians from the threat posed by sex offenders. The proposition accomplishes this by increasing penalties for certain sex offenders, prohibiting registered sex offenders from living close to schools or parks, tracking their whereabouts, and expanding the reach of the sexually violent

predator law. Proposition 83's purpose is no broader than that of Proposition 21. In fact, Proposition 83's purpose is narrower in that it addresses one problem instead of two interrelated ones. For these reasons, defendant's challenge to Proposition 83 based on the single-subject rule lacks merit.

II

### Section 288.4 Is Not a Lesser Included Offense of Section 288.3

■ Defendant contends the court should have instructed the jury the crime of arranging a meeting with a minor for the purpose of engaging in lewd and lascivious behavior (§ 288.4, subd. (a))[3] was a lesser included offense of contacting a minor with the intent of committing a lewd act (§ 288.3, subd. (a)). Defendant is wrong because section 288.4 is not a lesser included offense of section 288.3.

■ One of the tests used to determine whether a lesser offense is necessarily included in the charged offense is the elements test. (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1456 [89 Cal.Rptr.3d 402].) The elements test is satisfied if the greater offense cannot be committed without also necessarily committing the lesser offense. (*Ibid.*)

Here, defendant contends the elements test is satisfied because the two crimes share "remarkably similar elements." That is not the test. Rather, as we have just stated, the test is whether the greater offense cannot be committed without also necessarily committing the lesser offense. Here, the greater offense (§ 288.3) *can* be committed without committing the lesser offense (§ 288.4). Section 288.4 requires the element of "arrang[ing] a meeting" while section 288.3 does not. So, although as a factual matter, the crime of luring a minor (§ 288.3) may be carried out by arranging a meeting with that minor (§ 288.4), it is possible to commit the crime of luring a minor without arranging a meeting with that minor.

III–VI[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3] The crime of arranging a meeting with a minor for purpose of engaging in lewd and lascivious behavior is committed when a "person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting with a minor or a person he or she believes to be a minor for the purpose of exposing his or her genitals or pubic or rectal area, having the child expose his or her genitals or pubic or rectal area, or engaging in lewd or lascivious behavior." (§ 288.4, subd. (a).)

[*]See footnote, *ante*, page 442.

## DISPOSITION

The judgment is affirmed.

Nicholson, Acting P. J., and Murray, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 30, 2011, S196738.