Filed 7/31/14  P. v. Garcia CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039212 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS120091A) |
| v. | |
| ELI ESCOBAR GARCIA, | |
| Defendant and Appellant. | |

## I.     INTRODUCTION

Defendant Eli Escobar Garcia appeals after a jury convicted him of 15 counts of committing a lewd act on a child under the age of 14 (Pen. Code, § 288, subd. (a)[1]) and six counts of contacting or communicating with a minor with the intent to commit a sex offense (§ 288.3, subd. (a)).  The jury found that in committing seven of the lewd acts, defendant engaged in substantial sexual conduct.  (§ 1203.066, subd. (a)(8).)  Defendant was sentenced to a 17-year prison term.

On appeal, defendant contends:  (1) there was insufficient evidence to support his convictions of contacting or communicating with a minor with the intent to commit a sex offense; (2) the trial court erred by permitting the prosecutor to cross-examine defendant about matters that went beyond the scope of his direct examination; (3) the prosecutor

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

committed misconduct by referring to a fact not in evidence during argument to the jury; (4) the trial court erred at sentencing by failing to state reasons for imposing consecutive terms for certain counts, by relying on the victim's age as a sentencing factor, by not imposing an individualized sentence, by failing to consider all relevant factors, and by imposing the middle term instead of the low term on certain counts. Defendant also contends that the cumulative effect of the trial errors requires reversal. We will affirm the judgment.

Defendant has also filed a petition for writ of habeas corpus, which this court ordered considered with the appeal. We have disposed of the habeas petition by separate order filed this day. (See Cal. Rules of Court, rule 8.387(b)(2)(B).)[2]

## II.    BACKGROUND

In October of 2011, 12-year-old Jane Doe met 18-year-old defendant at her friend's birthday party, which was held in a park in Seaside. They began texting each other and soon began a dating relationship that included kissing and sexual intercourse. Doe, who lived with her grandparents, would initially sneak out of her house to see defendant. Later in the relationship, defendant would sneak into Doe's bedroom to see her.

### A.    *Late November 2011 (Counts 1-3)*

Before Thanksgiving in 2011, Doe snuck out of her house to meet up with defendant. She drove her grandmother's van to a market where defendant was waiting for her. Doe and defendant then drove around together. Nothing physical happened.

One or two weeks later, after Thanksgiving, Doe and defendant texted to make arrangements to meet again. They also texted about what they would do physically, which included Doe giving defendant "blow jobs and stuff." Doe again took her grandmother's van and drove around with defendant. They stopped and "got physical."

---

[2] All further rule references are to the California Rules of Court.

They touched each other and kissed, then took their clothes off and had sexual intercourse. Sometime afterwards, Doe told defendant that she was 12 years old.

Based on the above, defendant was charged with one count of contacting or communicating with a minor with the intent to commit a sex offense (count 1; § 288.3, subd. (a)) and two counts of committing a lewd act on a child under the age of 14 (counts 2 & 3; § 288, subd. (a)). Count 2 was based on the kissing; count 3 was based on the sexual intercourse. A substantial sexual conduct allegation was attached to count 3. (§ 1203.066, subd. (a)(8).)

### B. Mid-December 2011 (Counts 4 & 5)

In the middle of December 2011, Doe and defendant got together again after exchanging text messages. They walked together, held hands, and kissed.

Based on the above, defendant was charged with one count of contacting or communicating with a minor with the intent to commit a sex offense (count 4; § 288.3, subd. (a)) and one count of committing a lewd act on a child under the age of 14 (count 5; § 288, subd. (a)).

### C. Before Christmas 2011 (Counts 6 & 7)

Right before Christmas of 2011, Doe and defendant met up again after making arrangements via text messages. They went to defendant's friend's house, where they stayed overnight. Doe and defendant kissed while in the car.

Based on the above, defendant was charged with one count of contacting or communicating with a minor with the intent to commit a sex offense (count 6; § 288.3, subd. (a)) and one count of committing a lewd act on a child under the age of 14 (count 7; § 288, subd. (a)).

### D. After Christmas 2011 (Counts 8-10)

After Christmas of 2011, Doe called defendant and made arrangements to meet up with him. They drove to the beach in defendant's friend's car. They kissed and had sexual intercourse in the car.

3

Based on the above, defendant was charged with one count of contacting or communicating with a minor with the intent to commit a sex offense (count 8; § 288.3, subd. (a)) and two counts of committing a lewd act on a child under the age of 14 (counts 9 & 10; § 288, subd. (a)). Count 9 was based on the kissing; count 10 was based on the sexual intercourse. A substantial sexual conduct allegation was attached to count 10. (§ 1203.066, subd. (a)(8).)

### E. *November 20, 2011 Through January 20, 2012 (Counts 11-21)*

Following the incident after Christmas, Doe and defendant saw each other on a daily basis. Defendant would sneak into Doe's bedroom through a window. Doe would call defendant from school to find out if he was coming over. They always kissed when defendant came over, and they had sex on three or four different occasions. Doe took photographs of defendant kissing her and of defendant's hand on her breast.

Based on the above, defendant was charged with four counts of contacting or communicating with a minor with the intent to commit a sex offense (counts 11, 14, 17, & 21; § 288.3, subd. (a)) and seven counts of committing a lewd act on a child under the age of 14 (counts 12, 13, 15, 16, 18-20; § 288, subd. (a)). Counts 12 and 13 were based on the first time Doe and defendant kissed and had sex in the bedroom. Counts 15 and 16 were based on the second time Doe and defendant kissed and had sex in the bedroom. Counts 18 and 19 were based on the third time Doe and defendant kissed and had sex in the bedroom. Count 20 was based on defendant touching Doe's breast. Substantial sexual conduct allegations were attached to counts 13, 16, and 19. (§ 1203.066, subd. (a)(8).)

### F. *Los Angeles (Counts 22 & 23)*

In January of 2012, Doe's grandmother found a photograph of Doe and defendant. Doe's grandmother said she was going to send Doe away to a boarding school. Doe was taken to the police station. She informed defendant that the police were looking for him. Defendant said he planned to go to Los Angeles. Doe asked defendant to take her with

him.  Defendant agreed, then said no, because he did not want to get into trouble.  Doe then said, "[I]f you love me you'll take me."  She called him from school and arranged to meet him.  Some of defendant's friends then drove them both to an apartment in Los Angeles.

The day that they arrived in Los Angeles, Doe and defendant had sexual intercourse.  Defendant also orally copulated Doe.  After they went to sleep that night, defendant's uncle woke them up and handed them a phone.  Doe spoke to a police officer and her mother.  At about 2:00 a.m., police broke down the apartment door.

Based on the above, defendant was charged with two counts of committing a lewd act on a child under the age of 14 (counts 22 & 23; § 288, subd. (a)).  Substantial sexual conduct allegations were attached to both counts.  (§ 1203.066, subd. (a)(8).)

### G.     Defendant's Interview and Testimony

Defendant was interviewed by the police after the Los Angeles incident.  He acknowledged being in a dating relationship with Doe.  He claimed he had engaged in sexual intercourse with Doe only three times, beginning 30 days earlier.  He denied orally copulating her and denied having sex with her in Los Angeles.  He admitted Doe told him she was 12 years old.  Doe told him she had sex with someone else before him.

At trial, defendant admitted meeting Doe in October 2011 and texting with her afterwards.  He admitted continuing to see Doe after finding out that she was 12 years old, but he claimed he did not find out her true age until after they had sex "a couple of times."  Defendant admitting sneaking into Doe's house, going to Los Angeles with Doe, and having sex with her in Los Angeles.  Defendant testified that he and Doe "love each other very much" and that their relationship was about more than just sex.  He claimed he did not want to have sex with Doe after finding out her true age.  He admitted telling "some lies" during his police interview.

5

*H.     Verdicts and Sentencing*

The jury found defendant not guilty of two counts of contacting or communicating with a minor with the intent to commit a sex offense (counts 1 & 21; § 288.3, subd. (a)), but it found him guilty of all the other counts.  The jury found true all seven substantial sexual conduct allegations.  (§ 1203.066, subd. (a)(8).)  The trial court sentenced defendant to a 17-year prison term.

## III.   DISCUSSION

*A.     Sufficiency of the Evidence:  Contacting or Communicating with a Minor with the Intent to Commit a Sex Offense*

Defendant contends there was insufficient evidence to support his six convictions of contacting or communicating with a minor with the intent to commit a sex offense. (§ 288.3, subd. (a); counts 4, 6, 8, 11, 14 & 17.)  Specifically, defendant contends there was insufficient evidence that he "initiate[d] communication" with Doe, and insufficient evidence that he had "the intent to commit lewd or lascivious acts at the time of the communication."

### 1.     Standard of Review

Under the federal Constitution's due process clause, there is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  In addressing a claim of insufficient evidence, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Johnson* (1980) 26 Cal.3d 557, 578 (*Johnson*).)

6

### 2. Legal Background

Section 288.3, subdivision (a) provides: "Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section . . . 288 . . . involving the minor shall be punished by imprisonment in the state prison for the term prescribed for an attempt to commit the intended offense."

Section 288.3, subdivision (b) provides: "As used in this section, 'contacts or communicates with' shall include direct and indirect contact or communication that may be achieved personally or by use of an agent or agency, any print medium, any postal service, a common carrier or communication common carrier, any electronic communications system, or any telecommunications, wire, computer, or radio communications device or system."

Section 288.3 was added by an initiative measure in 2006. (Prop. 83, § 6, as approved by voters, Gen. Elec. (Nov. 7, 2006), eff. Nov. 8, 2006.) The "findings and declarations" section of the initiative (*id.*, § 2) includes the following statement: "[S]ex offenders . . . prey on the most innocent members of our society." (*Id.*, subd. (b).) The findings and declarations also state that the changes brought about by the initiative will put Californians "in a better position to keep themselves, their children, and their communities safe from the threat posed by sex offenders." (*Id.*, subd. (e).) The stated intent of the electorate in enacting the initiative was "to help Californians better protect themselves, their children, and their communities." (*Id.*, subd. (f).)

### 3. Analysis

We first address defendant's contention that there was insufficient evidence that he "initiate[d] communication" with Doe. Defendant acknowledges that nothing in section 288.3 explicitly requires that the defendant initiate communication with a minor,

7

but he argues that such a requirement should be read into the statute "[b]ased on the stated purposes of the passage of Proposition 83."

" 'In interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. [Citation.] Thus, [1] "we turn first to the language of the statute, giving the words their ordinary meaning." [Citation.] [2] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] [3] When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.]" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900-901.)

Thus, we begin by examining the plain language of the statute, which criminalizes "contact[] or communicat[ion] with a minor" when such contact or communication is done with the intent to commit a specified sex offense involving that minor. (§ 288.3, subd. (a).) Although the word "contact" can mean "to make contact" (see Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 249), it also means to "be in contact with" (*ibid.*). Moreover, the statute also applies to a person who "communicates" with a minor with the intent to commit a specified sex offense (§ 288.3, subd. (a)). The word "communicate" means "to convey knowledge of or information about **:** make known." (Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 232.) A person can "communicate[]" with a minor without initiating the communication. (§ 288.3, subd. (a).)

Moreover, the phrase "contacts or communicates with" (§ 288.3, subd. (a)) is explicitly defined in the statute, which does not specify that the perpetrator must initiate the contact or communication. Section 288.3, subdivision (b) states that " 'contacts or communicates with' shall include direct and indirect contact or communication that may be achieved personally or by use of an agent or agency, any print medium, any postal service, a common carrier or communication common carrier, any electronic

8

communications system, or any telecommunications, wire, computer, or radio communications device or system." Nothing in the foregoing definition indicates that the electorate intended the phrase "contacts or communicates with" to mean that the perpetrator must initiate the contact or communication.

Even if we were to find the plain language of the statute ambiguous, nothing in the stated intent of the electorate suggests that section 288.3 was intended to apply only where the perpetrator initiates communication with a minor. The summary of Proposition 83 provided to voters specified that "the common purpose of the provisions of Proposition 83 [was] to protect Californians from the threat posed by sex offenders." (*People v. Keister* (2011) 198 Cal.App.4th 442, 451 (*Keister*).) "[T]he provisions of Proposition 83 were summarized for voters as follows: (1) 'Increases penalties for violent and habitual sex offenders and child molesters'; (2) 'Prohibits registered sex offenders from residing within 2,000 feet of any school or park'; (3) 'Requires lifetime Global Positioning System monitoring of felony registered sex offenders'; (4) 'Expands definition of a sexually violent predator'; and (5) 'Changes current two-year involuntary civil commitment for a sexually violent predator . . . and subsequent ability of sexually violent predator to petition court for sexually violent predator's conditional release or unconditional discharge.' (Voter Information Pamp., Gen. Elec. (Nov. 7, 2006) official title and summary of Prop. 83, p. 42.)" (*Ibid.*)

Defendant appears to be arguing that since the intent of the electorate was to "protect Californians from the threat posed by sex offenders" (*Keister, supra,* 198 Cal.App.4th at p. 451), the electorate must have intended section 288.3 to apply only to sex offenders who initiate contact or communication with a minor. We disagree. Section 288.3 bars a person from contacting or communicating with a minor with the intent to commit a sex offense on that particular minor. The focus of the statute is the specific intent behind the contact or communication, not how the contact or communication begins. Thus, we effectuate the electorate's intent to protect Californians

9

from sex offenders by interpreting the statute to apply to all contact or communication with a minor that is accompanied by the intent to commit a sex offense on the minor. It was not necessary for the prosecution to prove that defendant initiated the contact or communication with Doe, only that he had the intent to commit a sex offense on Doe when he contacted or communicated with her.

We next address defendant's contention that there was insufficient evidence that he had "the intent to commit lewd or lascivious acts at the time of the communication." Defendant asserts there was no evidence regarding the content of his communications with Doe and thus no direct evidence of his intent. He acknowledges that he and Doe always communicated before meeting up, but he points out that they did not always have sexual intercourse. Thus, defendant claims, it was not reasonable to infer that he intended to commit a lewd act at the time of those communications.

Doe testified that she and defendant would always communicate before getting together. They exchanged text messages before the incident in the middle of December of 2011, when they held hands and kissed. They made arrangements to meet via text messages prior to the incident before Christmas of 2011, when they kissed in a car. They communicated by telephone call before the incident after Christmas of 2011, when they kissed and had sexual intercourse in a car. They always communicated by telephone before defendant came over to her house. Although they did not always engage in sexual intercourse when he came over, they always kissed. Thus, it was reasonable to infer that defendant intended to engage in lewd acts with Doe when he communicated with her prior to coming over.

Because it was unnecessary for the prosecution to prove that defendant initiated communication with Doe and because a reasonable trier of fact could find that defendant intended to engage in lewd acts with Doe at the time of the communications, substantial evidence supports defendant's convictions of contacting or communicating with a minor

10

with the intent to commit lewd acts (§ 288.3, subd. (a)), as charged in counts 4, 6, 8, 11, 14, and 17. (See *Johnson, supra,* 26 Cal.3d at p. 578.)

## B. Cross-Examination of Defendant

Defendant contends the trial court erred by permitting the prosecutor to cross-examine him about matters beyond the scope of his direct examination.

### 1. Proceedings Below

On direct examination, defendant admitted meeting Doe in October 2011 and texting with her afterwards. He admitted seeing Doe after knowing that she was 12 years old. He admitting going to Los Angeles with Doe. Defendant was not asked whether he had engaged in sexual intercourse with Doe or about any of the specific incidents underlying the charges.

On cross examination, the prosecutor asked, "Would it be fair to say that you knew [Doe] was 12 years old before you had sexual intercourse with her?" Defendant objected to the question as "beyond the scope of direct." The trial court overruled the objection. Defendant answered, "No, afterwards," and explained that he thought Doe was 15 or 16 years old.

The prosecutor then asked, "And how many times had you had sex with her before you found out she was 12?" Defendant again objected to the question as "beyond the scope of direct." The trial court again overruled the objection. Defendant answered that he had sex with Doe "a couple of times" before finding out her true age.

The prosecutor later asked defendant about the time he and Doe had sex in her grandmother's van. Defendant again objected to the question as "beyond the scope of direct." After a sidebar conference, the trial court overruled the objection. Defendant answered that he did not know Doe was 12 years old at the time they had sex in the van.

The prosecutor then asked, "When you were having sex with her, did you think what you did was okay?" Defendant again objected to the question as "beyond the scope of direct." The trial court overruled the objection and defendant asked the prosecutor to

11

clarify the question. The prosecutor then asked whether defendant felt that he had to hide the fact he had sex with Doe in the van from other people, such as Doe's family. Defendant responded that he "didn't really want to hide it but most people don't reveal all that stuff."

The prosecutor later asked, "How many times did you have sex with [Doe] at her house say in December and January?" Defendant again objected to the question as "beyond the scope of direct." The trial court overruled the objection and defendant answered that he did not know, but it might have been four to six times.

### 2. Legal Background

It is a "familiar rule that cross-examination must be 'within the scope of the direct examination.' [Citations.]" (*People v. Lynn* (1971) 16 Cal.App.3d 259, 271 (*Lynn*); see Evid. Code, § 761.) "The permissible scope of cross-examination of a defendant is generally broad. 'When a defendant voluntarily testifies, the district attorney may fully amplify his testimony by inquiring into the facts and circumstances surrounding his assertions.' " (*People v. Chatman* (2006) 38 Cal.4th 344, 382.) "Once a defendant takes the stand and testifies to the circumstances of the charged offenses, the prosecutor on cross-examination is permitted 'to explore the identical subject matter in much greater detail.' [Citations.]" (*People v. Mayfield* (1997) 14 Cal.4th 668, 754 (*Mayfield*).) A defendant "cannot artificially limit that scope by limiting his direct testimony [citation]." (*Lynn, supra,* at pp. 271, 272 [although defendant testified only about offenses committed on a particular date, cross-examination about earlier offenses was "relevant and permissible"].)

We review the trial court's rulings on defendant's objections for an abuse of discretion. (See *People v. Farley* (2009) 46 Cal.4th 1053, 1109-1110; *People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

12

### 3.    Analysis

Defendant contends the trial court should have sustained the objections he made below and barred the prosecution from asking him specific questions about his sexual activities with Doe.  Defendant contends that on direct examination, he never "testifie[d] to the circumstances of the charged offenses" (*Mayfield, supra,* 14 Cal.4th at p. 754) and thus he did not "invite the prosecutor's cross-examination regarding specifics of the alleged crimes."  He claims the improper cross-examination was prejudicial because Doe's testimony was "confusing and conflicting," and thus his testimony served to "bolster" the prosecution's case.

Although defendant did not directly deny committing the charged offenses on direct examination, the record indicates he testified in order to persuade the jury that he should not be found guilty because he was involved in a consensual relationship with Doe.  Despite his attempt to limit the scope of cross-examination by offering only vague and abbreviated testimony about the relationship, the prosecution was entitled to explore the topic in greater detail.  (See *Mayfield, supra,* 14 Cal.4th at p. 754; *Lynn, supra,* 16 Cal.App.3d at p. 272.)  For instance, after defendant admitted, on direct examination, that he continued to see Doe after knowing that she was 12 years old, the prosecutor was permitted to ask whether defendant found out Doe was 12 years old before or after he had sexual intercourse with her.  The prosecutor could also ask defendant how many times he had sexual intercourse with Doe after finding out that she was 12 years old.  Also, since the import of defendant's testimony was that his conduct was not criminal, the prosecutor was permitted to ask him whether he thought it was "okay" when he was having sexual intercourse with Doe.

In sum, the trial court did not abuse its discretion by overruling defendant's objections when he asserted that the prosecutor was cross-examining him about matters that went beyond the scope of his direct examination.

13

### C.   *Prosecutorial Misconduct*

Defendant contends the prosecutor committed misconduct by referring to a fact not in evidence during argument to the jury:  Doe's lack of prior sexual experiences.

### 1.   **Proceedings Below**

During argument to the jury, the prosecutor noted there was a jury instruction stating that the jury should not "use sympathy."[3]  The prosecutor then stated, "[T]he People really don't have any sympathy for [defendant] because of the fact that he's 18 and she's 12 years old.  His acts as far as what he did with [Doe] are reprehensible.  [¶] The fact that he was aware that she was young.  The fact that he was aware that she was living with her parents.  The fact that []he encouraged her to drive her grandmother's vehicle at substantial risk to her own safety, her own life.  The fact that he kept her out all night a number of times when she's in school.  *The fact that her first sexual experiences are with this 18-year-old man.  This is something that will stay with her forever.  That's why these crimes are so horrific is because you never have another first time.  This is part of [Doe's] sexual history for the rest of her life.*"  (Italics added.)

### 2.   **Legal Background**

As the California Supreme Court explained in *People v. Hill* (1998) 17 Cal.4th 800 (*Hill*), it is misconduct for a prosecutor to argue facts not in evidence "because such statements 'tend[ ] to make the prosecutor his [or her] own witness—offering unsworn testimony not subject to cross-examination.  It has been recognized that such testimony, "although worthless as a matter of law, can be 'dynamite' to the jury because of the special regard the jury has for the prosecutor, thereby effectively circumventing the rules of evidence." [Citations.]'  [Citations.]  'Statements of supposed facts not in evidence . . .

---

[3] Pursuant to CALCRIM No. 200, the trial court instructed the jury, "Do not let bias, sympathy, prejudice or public opinion influence your decision."

14

are a highly prejudicial form of misconduct, and a frequent basis for reversal.' " (*Id.* at p. 828.)

Defendant acknowledges that generally, "trial counsel's failure to object in a timely manner to asserted prosecutorial misconduct . . . results in the forfeiture of the claim on appeal. [Citation.]" (*People v. Dykes* (2009) 46 Cal.4th 731, 757.) Defendant suggests this court can exercise discretion to review his claim because the prosecutorial misconduct violated his constitutional rights to due process and a fair trial. Defendant also asserts that trial counsel was ineffective for failing to object to the misconduct.

To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) "counsel's performance fell below a standard of reasonable competence" and (2) "prejudice resulted." (*People v. Anderson* (2001) 25 Cal.4th 543, 569; *Strickland v. Washington* (1984) 466 U.S. 668, 687-688 (*Strickland*).) To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra,* at p. 694.)

### 3.    Analysis

Defendant contends there was no evidence that Doe's "first sexual experience[]" was with him and thus that the prosecutor committed misconduct by referring to a fact not in evidence. Defendant contends that the misconduct was prejudicial because the prosecutor's argument "suggested that [defendant] was the corrupting influence in the relationship, when in fact, much of the evidence showed that Jane Doe was the initiator in the relationship."

The Attorney General argues there was no prosecutorial misconduct because "Doe's testimony gave rise to the inference that she had not previously had sexual intercourse" and although defendant told the police that Doe said she had previously engaged in sexual intercourse, defendant admitted he had lied to the police.

15

Whether we address defendant's prosecutorial misconduct claim directly or through the prism of his claim of ineffective assistance of counsel, reversal is not required. Even if the prosecutor committed misconduct and even if trial counsel should have objected, defendant has not demonstrated prejudice. He has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland, supra,* 466 U.S. at p. 694; see *People v. Milner* (1988) 45 Cal.3d 227, 245 (*Milner*) ["Prosecutorial misconduct is cause for reversal only when it is 'reasonably probable that a result more favorable to the defendant would have occurred had the district attorney refrained from the comment attacked by the defendant.' "].)

First, the jury was instructed that the attorney's statements were not evidence and that it should decide the case based only on the evidence presented at trial. At the beginning of trial, the jury was instructed, "You must decide what the facts are in this case. You must use only the evidence that is presented in the courtroom. Evidence is the sworn testimony of witnesses, the exhibits admitted into evidence and anything else I tell you to consider as evidence. [¶] . . . [¶] Nothing that the attorneys say is evidence." (See CALCRIM No. 104.) At the end of trial, the jury was instructed, "You must decide what the facts are. It is up to all of you and you alone to decide what happened based only on the evidence that has been presented to you in this trial." (See CALCRIM No. 200.) The jury was also instructed, "Nothing that the attorneys say is evidence." (See CALCRIM No. 222.) "In the absence of evidence to the contrary, we presume the jury understood and followed the court's instructions" and did not base its verdicts on any misstatement by the prosecutor. (*People v. Williams* (2009) 170 Cal.App.4th 587, 635.)

Second, any misstatement by the prosecutor did not bear directly on the issue of whether defendant committed the charged offenses, and the evidence of the charged offenses was overwhelming. Doe testified that she engaged in consensual sexual intercourse with defendant as well as other acts such as kissing and holding hands.

16

Defendant admitted having sexual intercourse with Doe and being in a romantic relationship with her despite her age. Doe testified that she and defendant would meet up after communicating by text message or phone calls, and defendant acknowledged exchanging text messages with her. On this record, there is no reasonable probability that "the result of the proceeding would have been different" if trial counsel had objected to the prosecutor's statement about Doe's lack of prior sexual experience. (See *Strickland, supra,* 466 U.S. at p. 694.) Likewise, it is not " 'reasonably probable that a result more favorable to the defendant would have occurred had the district attorney refrained from the comment attacked by the defendant.' " (See *Milner, supra,* 45 Cal.3d at p. 245.)

### D.     *Cumulative Error*

Defendant contends that the cumulative effect of the trial errors requires reversal. (See *Hill, supra,* 17 Cal.4th at p. 844 ["a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error"].) We have concluded that the trial court did not err by overruling defendant's objections when he asserted that the prosecutor was cross-examining defendant about matters that went beyond the scope of his direct examination, and that any prosecutorial misconduct was not prejudicial. As we have not found multiple trial errors, there is no cumulative prejudice.

### E.     *Sentencing Error*

Defendant contends the trial court made numerous errors at the sentencing hearing. He claims the trial court failed to state reasons for imposing consecutive terms for seven of the lewd act counts, improperly relied on Doe's age as a sentencing factor, failed to impose an individualized sentence, failed to find certain factors in mitigation, and erroneously imposed the middle term instead of the low term on certain counts.

#### 1.     Proceedings Below

The sentencing hearing was held on January 9, 2013. The probation report prepared for the sentencing hearing identified two possible factors in aggravation and

17

three possible factors in mitigation. The suggested factors in aggravation included Doe's vulnerability due to her age and the fact that the crimes indicated planning. The suggested factors in mitigation included the fact that Doe "was an initiator of, and a willing participant in" the offenses, the fact that defendant had no prior record, and the fact that defendant "voluntarily acknowledged wrongdoing before arrest or at an early stage of the criminal process."

Before imposing sentence, the trial court made some comments about the "social implications" of an adult having a sexual relationship with a minor. The court noted that "under the laws we have, a 12 year old is simply not old enough, mature enough, intelligent enough . . . to make the decisions to engage in sexual relations with someone 18 years of age or older." The court also noted that when defendant took Doe to Los Angeles with him, "anything" could have happened. The court noted that in similar situations, people had turned to drug use or prostitution. The court also noted that "this type of behavior can lead to pregnancy." However, the court acknowledged, those things "didn't happen in this case."

In explaining how it calculated the 17-year sentence, the trial court stated, "I broke down the counts [not by] act but by incident."

The trial court selected count 3 (the lewd act count based on the first time defendant had sexual intercourse with Doe) as the principal term. The trial court imposed the low term of three years for count 3, noting "that the victim was vulnerable based on her age, but that is an aspect of the charges." The court found that "the manner the crime was carried out indicated some planning and sophistication," but that defendant's lack of a prior criminal record was a factor in mitigation.

The court imposed consecutive two-year sentences (one-third of the middle term) for seven of the other lewd act counts (counts 5, 7, 10, 13, 16, 19, and 23). (See § 1170.1, subd. (a) ["The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction

18

for which a consecutive term of imprisonment is imposed."].) The court imposed concurrent terms of six years (the middle term) for all of the other lewd act counts (counts 2, 9, 12, 15, 18, 20, and 22), and concurrent terms of three years (the middle term) for all of the counts of contacting or communicating with a minor with the intent to commit a sex offense (counts 4, 6, 8, 11, 14, and 17). The trial court did not specify its reasons for imposing the middle term as to any of these counts.

### 2. Failure to State Reasons For Consecutive Terms

Defendant contends the trial court erred by failing to state its reasons for imposing consecutive sentences for counts 5, 7, 10, 13, 16, 19, and 23 (seven of the lewd act counts) and that the failure of his attorney to object at sentencing constituted ineffective assistance of counsel.

The trial court must state its reasons for its sentencing choices, including the choice to impose consecutive subordinate terms. (See § 1170, subd. (c); rule 4.406(b)(4) & (5); *People v. Powell* (2011) 194 Cal.App.4th 1268, 1297.) Criteria affecting the decision to impose consecutive rather than concurrent sentences include "[f]acts relating to the crimes, including whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other; [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Rule 4.425(a).) In addition, "[a]ny circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences, except: [¶] (1) A fact used to impose the upper term; [¶] (2) A fact used to otherwise enhance the defendant's prison sentence; and [¶] (3) A fact that is an element of the crime may not be used to impose consecutive sentences." (Rule 4.425(b).)

Defendant acknowledges that trial counsel's failure to request that the court state its reasons waives the issue on appeal. (See *People v. Scott* (1994) 9 Cal.4th 331, 356

19

(*Scott*).) Defendant contends there is no satisfactory explanation for trial counsel's failure to object. We disagree. Although the trial court did not explicitly state that it was imposing consecutive terms because "[t]he crimes were committed at different times or separate places" (rule 4.425(a)(3)), the court did state that in determining defendant's sentence, it "broke down the counts . . . by incident." Taken in context, the court's statement appears to be an explanation of why it chose to impose consecutive terms for seven of the lewd act counts—i.e., because defendant committed those lewd acts at different times. (See *People v. Sanchez* (1994) 23 Cal.App.4th 1680, 1688.) Given the court's statement about calculating defendant's sentence by incident, trial counsel could reasonably have considered it unnecessary to request an express statement of reasons for the imposition of consecutive sentences. (See *People v. Alvarado* (2001) 87 Cal.App.4th 178, 194; *People v. Gopal* (1985) 171 Cal.App.3d 524, 549 [trial court sufficiently stated reasons for consecutive terms where it described offenses as occurring during "two courses of conduct"].) Moreover, in light of the trial court's statement, there is no reasonable probability that "the result of the proceeding would have been different" if trial counsel had objected. (See *Strickland, supra,* 466 U.S. at p. 694.)

### 3. Victim's Age

Defendant contends the trial court erred by basing its consecutive sentencing decision on Doe's age. Referring to the trial court's comments about "the social implications" of a 12 year old engaging in sexual intercourse, defendant points out that "[a] fact that is an element of the crime may not be used to impose consecutive sentences" (rule 4.425(b)(3)) and that Doe's age was an element of the lewd act counts. (See § 288, subd. (a).) Defendant again acknowledges that trial counsel's failure to object at sentencing waived this issue for appeal (see *Scott, supra,* 9 Cal.4th at p. 353), and thus he contends that trial counsel's failure to object constituted ineffective assistance of counsel.

20

The record does not support defendant's claim that the trial court found Doe's age to be a factor supporting the imposition of consecutive sentences. First, as noted above, the trial court indicated it was imposing consecutive sentences for seven of the lewd act counts because those counts occurred during separate incidents. The trial court's reference to Doe's age came during its comments about "the social implications" of an adult having a sexual relationship with a minor and the fact that the law precluded the court from finding that a 12-year-old can be mature enough to make the decision to have sexual intercourse with someone 18 years old. These comments were not made with reference to the court's decision to impose consecutive sentences. Rather, the court's comments appear to have been directed at the pleas for leniency made by defendant and Doe's family.[4] Further, the trial court explicitly acknowledged that it could not use Doe's age as a sentencing factor because "that is an aspect of the charges." Although the trial court made the latter comment when explaining why it was imposing the low term for count 3, nothing in the record indicates the trial court did not understand that the same principle applied to the decision whether to impose consecutive terms. (See *People v. Mosley* (1997) 53 Cal.App.4th 489, 496 (*Mosley*) ["a trial court is presumed to have been aware of and followed the applicable law"].) And, because nothing in the record indicates that the trial court found Doe's age to be a factor supporting the imposition of consecutive sentences, trial counsel was not ineffective for failing to object on that basis.

### 4. Individualized Sentence

Defendant contends the trial court erred by referring to the consequences of other similar crimes rather than focusing on the specific consequences and circumstances of his crimes. Defendant again argues that trial counsel's failure to object on this ground at sentencing constituted ineffective assistance of counsel.

---

[4] Doe's mother spoke at the sentencing hearing. She expressed that she believed her daughter was partly responsible and asked the trial court "for a reasonable sentence" that would not take defendant's "young adult life away from him."

Citing *Williams v. New York* (1949) 337 U.S. 241 at page 247, defendant claims the trial court's reliance on other crimes "violates the principle that 'the punishment should fit the offender and not merely the crime.' " Defendant also cites to rule 4.410(a), which lists seven "[g]eneral objectives of sentencing": "(1) Protecting society; [¶] (2) Punishing the defendant; [¶] (3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses; [¶] (4) Deterring others from criminal conduct by demonstrating its consequences; [¶] (5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration; [¶] (6) Securing restitution for the victims of crime; and [¶] (7) Achieving uniformity in sentencing." According to defendant, his sentence "is not supported by any of the stated objectives."

To the extent the trial court's sentencing decisions were influenced by its views on the consequences of similar criminal conduct in other cases, we find no error and thus that trial counsel was not ineffective for failing to object. The trial court's comments about the serious consequences that could have occurred due to defendant's criminal were appropriately focused on the objectives of deterring defendant and others from engaging in similar conduct in the future. (See rule 4.410(a)(3) & (4).)

### 5. Failure to Consider Relevant Factors

Defendant contends the trial court conducted "a flawed consideration of the relevant factors" when imposing consecutive sentences. According to defendant, if the trial court had reviewed all of the factors in rules 4.425 and 4.423, it would not have imposed consecutive sentences. Defendant contends that trial counsel should have objected.

Defendant emphasizes that all of his offenses stemmed from his relationship with Doe, who engaged in sexual intercourse consensually and claimed to love defendant. Defendant suggests that multiple consensual sex acts, committed on different dates but with the same victim, cannot support a finding that the offenses were committed "at

22

different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Rule 4.425(a)(3).) However, defendant cites no authority supporting this proposition. Defendant also argues that consecutive sentences were unwarranted because his crimes do not meet the other two criteria in rule 4.425(a): independent crimes and objectives, and separate acts of violence. Defendant fails to recognize that "[o]nly one criterion . . . is necessary to support a consecutive sentence. [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 552 (*Davis*).)

Defendant also contends the evidence supports a number of "unenumerated" circumstances in mitigation, which "warrant the imposition of concurrent sentences." First, citing to *People v. Leon* (2010) 181 Cal.App.4th 452 at pages 467 to 468, defendant suggests that if consecutive sentences may be imposed where there are multiple victims, concurrent terms should be imposed where there is only one victim. We find no support for this claim in the cited case, rule 4.425, or any other authority. Second, defendant contends concurrent terms were warranted because Doe's mother requested the court impose a lenient sentence, because of his youth, because he did not initially know Doe's age, because he attempted to break off the relationship, and because he "did not seek to conceal the relationship." However, defendant cites no authority to support his claim that these factors may be considered when a trial court determines whether to impose consecutive or concurrent sentences. While rule 4.425(b) allows the trial court to consider "[a]ny circumstances in aggravation or mitigation," the foregoing factors are not among the factors in mitigation listed in rule 4.423.

Citing to the enumerated factors in mitigation listed in the probation report, defendant contends that if trial counsel had objected and asked the trial court to consider all of the factors in mitigation (including defendant's early admission of responsibility and Doe's role as an initiator of the crimes), the court would not have imposed consecutive sentences. The gist of defendant's claim is that the trial court was unaware

23

that it could consider mitigating factors listed in rule 4.423 as well as the criterion listed in rule 4.425. Nothing in the record indicates the trial court was unaware that it could consider factors in mitigation, as expressly provided by rule 4.425(b). As stated above, "a trial court is presumed to have been aware of and followed the applicable law." (*Mosley, supra,* 53 Cal.App.4th at p. 496.) And, again, "[o]nly one criterion . . . is necessary to support a consecutive sentence. [Citation.]" (*Davis, supra,* 10 Cal.4th at p. 552.) The record indicates that the trial court imposed consecutive sentences based on one of the enumerated criteria: "[t]he crimes were committed at different times or separate places." (Rule 4.425(a)(3).) The trial court was not required to consider any factors in mitigation. (Rule 4.425(b).) Thus, even if trial counsel had objected below and argued that the trial court should consider the mitigating factors listed in the probation report, there is no reasonable probability that "the result of the proceeding would have been different." (See *Strickland, supra,* 466 U.S. at p. 694.)

### 6. Imposition of Concurrent Middle Terms

Defendant contends the trial court erred by imposing the middle term on counts 2, 9, 12, 15, 18, 20, and 22 (the lewd act counts for which the court imposed concurrent terms). Defendant notes that the trial court imposed the low term for count 3 after weighed the factors in aggravation and the factors in mitigation but imposed the middle term for these counts despite the fact that the same reasoning applied.

Defendant fails to acknowledge that the waiver doctrine applies to a claim that the trial court "misweighed the various factors" relevant to a sentencing choice. (See *Scott, supra,* 9 Cal.4th at p. 353.) Defendant does not claim that trial counsel was ineffective for failing to object on this basis and thus we need not consider this claim.

Even if we were to consider defendant's claim, we would find no abuse of discretion. "Generally, determination of the appropriate term is within the trial court's broad discretion [citation] and must be affirmed unless there is a clear showing the sentence choice was arbitrary or irrational [citation]. 'Sentencing courts have wide

24

discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in qualitative as well as quantitative terms.'  [Citation.]"  (*People v. Lamb* (1988) 206 Cal.App.3d 397, 401 (*Lamb*).)

Here, the probation report suggested three factors in mitigation and two factors in aggravation, one of which (Doe's vulnerability due to her age) the trial court rejected. The trial court expressly found one factor in mitigation (defendant's lack of a prior record) and one factor in aggravation (the crime indicated planning).  The trial court also indicated it agreed that Doe was an initiator in the criminal offenses, but the court made no specific finding as to whether defendant "voluntarily acknowledged wrongdoing before arrest or at an early stage of the criminal process."  Since defendant admitted he was not entirely truthful with the police during his interview, the trial court could have found that this was not a factor in mitigation.  And even if there were quantitatively more factors in mitigation than factors in aggravation, the trial court was not required to find that the factors in mitigation qualitatively outweighed the factors in aggravation.  (*Lamb, supra,* 206 Cal.App.3d at p. 401.)  The court could rationally have found that the aggravating factor of planning "counterbalance[d]" the mitigating factors.  (*People v. Jones* (1985) 164 Cal.App.3d 1173, 1181.)  We cannot say that the trial court made an "arbitrary or irrational" decision when it imposed the middle term for counts 2, 9, 12, 15, 18, 20, and 22.  (See *ibid.*)

## IV. DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MÁRQUEZ, J.

_____
GROVER, J.