Filed 7/2/19

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ELIBERTO CRUZ JACOBO,<br><br>        Defendant and Appellant. | D074887<br><br>(Super. Ct. No. INF1500443) |

APPEAL from a judgment of the Superior Court of Riverside County, Richard A. Erwood, Judge.  Affirmed in part; reversed in part, and remanded for resentencing.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Alana Butler and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]        Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II and parts IV through IX of the Discussion.

From 2013 through 2015, defendant Eliberto Cruz Jacobo, a middle-aged male, used a Facebook account with the fictional female persona of "Marlissa" to send "friend requests" to seven females under age 18, each of whom accepted Marlissa's request. Marlissa's Facebook profile page contained photographs of a scantily clad woman holding money. Using private messages through Facebook, Marlissa encouraged each of the minors to become prostitutes. Four of them eventually agreed and Marlissa arranged for each minor to have a "date" with Jacobo in exchange for money. At those dates, Jacobo took photographs and/or videos of the minors, had vaginal intercourse with them, and performed other sexual acts with them. Following a presentation on human trafficking at high school, two of the minors reported to their teachers their Facebook communications with Marlissa. A subsequent investigation by law enforcement officers showed Jacobo had used the Marlissa persona on Facebook to communicate with the seven minors and encourage them to become prostitutes. His laptop computer contained the photographs and videos he had taken of some of them. Jacobo was arrested and charged with various sex offenses.

At trial, the jury found Jacobo guilty of 60 sex offenses, including aggravated human trafficking (Pen. Code, § 236.1, subd. (c)(2)),[1] contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a)), sending harmful matter to a minor (§ 288.2, subd. (a)), oral copulation with a person under age 18 (former § 288a, subd. (b)(1)), unlawful intercourse with a minor more than three years younger (§ 261.5, subd. (c)),

---

[1]     All statutory references are to the Penal Code.

2

sexual penetration with a person under age 18 (§ 289, subd. (h)), using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)), and unlawful intercourse with a minor under age 18 by a person over age 21 (§ 261.5, subd. (d)). The trial court sentenced him to an aggregate indeterminate term of 105 years to life in prison and a determinate term of 14 years 4 months.

On appeal, Jacobo contends:

(1) there is insufficient evidence to support his convictions for aggravated human trafficking (§ 236.1, subd. (c)(2)) under a pandering theory because the evidence shows he intended to be the minors' sole client;

(2) there is insufficient evidence to support his convictions for aggravated human trafficking (§ 236.1, subd. (c)(2)) under a pandering theory because the evidence does not show he used fraud or deceit;

(3) there is insufficient evidence to support two of his convictions for using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)) because the photographs do not depict the required sexual conduct;

(4) there is insufficient evidence to support the remainder of his convictions for using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)) because he did not direct them to pose or model;

(5) his convictions for sending harmful matter to a minor (§ 288.2, subd. (a)) must be reversed because section 288.2, subdivision (a) violates the commerce clause of the United States Constitution;

(6) his convictions for sending harmful matter to a minor (§ 288.2, subd. (a)) must be reversed because section 288.2, subdivision (a) is overbroad and violates the First Amendment to the United States Constitution;

(7) six of his convictions for sending harmful material depicting a minor engaged in sexual conduct to a minor (§ 288.2, subd. (a)(1))

3

should be reduced to convictions for sending harmful material to a minor (§ 288.2, subd. (a)(2));

(8) his convictions for contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a)) must be reversed because section 288.3, subdivision (a) is unconstitutionally vague;

(9) his convictions for contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a)) must be reversed because section 288.3, subdivision (a) is overbroad and violates the First Amendment to the United States Constitution; and

(10) section 654 precludes his punishment for both his aggravated human trafficking offenses and his other offenses.

As we shall explain, we conclude six of his convictions for sending harmful material depicting a minor engaged in sexual conduct to a minor (§ 288.2, subd. (a)(1)) must be reduced to convictions for sending harmful material to a minor (§ 288.2, subd. (a)(2)). In all other respects, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2013, Jacobo, using the fictional female persona of Marlissa, sent K.C., then 16 years old, a friend request on Facebook, which request K.C. then accepted. Through Facebook private messages, Marlissa asked K.C. how old she was and whether she wanted to make easy money. K.C. replied she was 17 years old. Marlissa explained to K.C. that she was not talking about a regular job, but instead a job as an escort. Marlissa stated that K.C. could make $150 "tak[ing] care of a guy in bed." K.C. replied, "No thanks." Marlissa told K.C. to check her "timeline" on Facebook. K.C. did so and saw photographs of a scantily clad woman holding money. Marlissa continued to try to contact K.C. for several months, but K.C. did not respond except for a short reply in

4

November 2014 stating that she was not doing much and asking what Marlissa was doing.

From June through August 2014, Jacobo, using the fictional persona of Marlissa, similarly communicated with 13-year-old A.M. through Facebook and attempted, albeit unsuccessfully, to persuade her to become a prostitute.[2]  From April through July 2015, Jacobo, using the fictional persona of Marlissa, similarly communicated with 16-year-old Y.V. through Facebook and attempted, albeit unsuccessfully, to persuade her to become a prostitute.

In December 2013, Jacobo, using the fictional persona of Marlissa, similarly communicated with 16-year-old S.M. through Facebook and attempted to persuade her to become a prostitute.  Marlissa stated that she was an escort, explaining that an escort "takes care of a guy in bed," and asked S.M. whether she wanted to be "hooked up" and make $150.  After further prodding by Marlissa the following day, S.M. agreed.  Marlissa told her, "Just be down boo.  We only live once and nobody is going to know or find out."  In January 2014, Marlissa asked S.M. if she would like to do the "hustle" before school for $150.  S.M. told Marlissa to give the client her number and have him call her.  Marlissa replied, "Go for it boo.  We only live once and hustles are fun.  Client and I are driving to hotel."  Marlissa sent S.M. a photograph of Jacobo and told her that he lived nearby, would pay $150, and could be a steady customer.

---

[2]    Although A.M. was then 13 years old, she told Marlissa that she was 16 years old.

5

Jacobo picked up S.M. in front of her school and took her to a motel room. He took a photograph of her there. Jacobo and S.M. had intercourse and then she orally copulated him and he orally copulated her.[3] Afterward, Jacobo paid S.M. $150. A few months later, Marlissa sent a message to S.M. stating, "[y]our client hit me up. He said for you to text him." S.M. never again met with Jacobo or any other client.

From June 2014 through August 2014, Jacobo, using the fictional persona of Marlissa, similarly communicated with 16-year-old G.M. through Facebook and attempted to persuade her to become a prostitute. After initially declining, G.M. ultimately agreed after additional prodding by Marlissa. Jacobo picked up G.M. at her home, took her to a motel room, paid her $150, and had sexual intercourse with her. He took sexually explicit photographs of G.M. and two video recordings of them engaging in oral copulation and vaginal intercourse. After that "date," Marlissa continued to ask G.M. whether she wanted to do another trick with Jacobo, but G.M. declined.

From June 2013 through July 2014, Jacobo, using the fictional persona of Marlissa, similarly communicated with 14-year-old Y.C. through Facebook and attempted to persuade her to become a prostitute. Y.C. agreed because her parents were "broke" and she was taking care of herself. Marlissa arranged a "date" with Jacobo, who picked her up and took her to a motel room where they had sexual intercourse. Jacobo took sexually explicit photographs of Y.C. and video recordings of them engaging in

---

3  At trial, five video recordings of Jacobo having sexual intercourse with S.M. were played for the jury. During one video recording, Jacobo told S.M., "[s]crew Marlissa," stating that he would rather come and see S.M.

sexual intercourse. In the following months, Marlissa sent Y.C. messages encouraging her to contact Jacobo again, but Y.C. replied that she was no longer interested.

From May 2014 through February 2015, Jacobo, using the fictional persona of Marlissa, similarly communicated with 16-year-old A.C. through Facebook and attempted to persuade her to become a prostitute. Marlissa arranged for Jacobo to pick up A.C. at her high school. He took her to a motel room, but, rather than having sex with him, A.C. robbed him at knife point and walked home. Thereafter, Marlissa complained to A.C. about her robbing Jacobo and told her she should finish the trick, promising her a lucrative trip to San Diego. After A.C. agreed, Jacobo took her to a motel room where they had sexual intercourse and he took sexually explicit photographs of her and video recordings of them. Thereafter, A.C. met with Jacobo an additional time, but Marlissa never arranged any additional clients for her.

After attending high school presentations on human trafficking, K.C. and Y.V. each spoke with their teachers about communications they had with Marlissa through Facebook. Thereafter, they spoke with Riverside County Deputy Sheriff Daniel Engels about their communications with Marlissa. Engels obtained a search warrant for Marlissa's Facebook account and found 8,033 pages of records for that account. That account led Engels to an internet account belonging to Jacobo. A subsequent search of Jacobo's home located a laptop computer that contained Marlissa's Facebook profile photograph. That photograph was of a woman, Claudia A., with whom Jacobo regularly had sex for money. She was unaware that Jacobo had used photographs of her under the

7

name Marlissa.  Jacobo's laptop computer also contained sexually explicit photographs of other females, including the minors described *ante* with whom he had sex.

A third amended information charged Jacobo with seven counts of aggravated human trafficking by fraud or deceit (§ 236.1, subd. (c)(2)) and 55 other sexual offenses. After two counts were dismissed on the prosecution's motion, a jury found Jacobo guilty on 60 counts, including seven counts of aggravated human trafficking by fraud or deceit (§ 236.1, subd. (c)(2)), 10 counts of contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a)), six counts of sending harmful material depicting a minor to a minor (§ 288.2, subd. (a)(1)), five counts of sending harmful material to a minor (§ 288.2, subd. (a)(2)), five counts of oral copulation with a person under age 18 (former § 288a, subd. (b)(1)), three counts of unlawful intercourse with a minor more than three years younger (§ 261.5, subd. (c)), two counts of sexual penetration with a person under age 18 (§ 289, subd. (h)), 21 counts of using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)), and one count of unlawful intercourse with a minor under age 18 by a person over age 21 (§ 261.5, subd. (d)).  The trial court sentenced Jacobo to consecutive terms of 15 years to life in prison for each of the seven aggravated human trafficking counts, for an aggregate indeterminate term of 105 years to life, and an aggregate determinate term of 14 years 4 months.  Jacobo timely filed a notice of appeal.

DISCUSSION

I

*Substantial Evidence to Support Jacobo's Convictions
for Aggravated Human Trafficking under a Pandering Theory*

Jacobo contends there is insufficient evidence to support his convictions of section 236.1, subdivision (c)(2) aggravated human trafficking (hereinafter section 236.1(c)(2)), under a pandering theory because the evidence shows he intended to be the minors' sole client. In particular, he argues pandering requires that the panderer intend to procure another person for a third person and not just for the panderer.

A

When reviewing a trial court's denial of a section 1118.1 motion for acquittal, we apply the substantial evidence standard of review. (*People v. Roldan* (2011) 197 Cal.App.4th 920, 924.) Likewise, when a conviction is challenged on appeal for insufficient evidence to support it, we apply the substantial evidence standard of review. (*People v. Vines* (2011) 51 Cal.4th 830, 869 (*Vines*); *People v. Johnson* (1980) 26 Cal.3d 557, 578 (*Johnson I*).) In applying that substantial evidence standard, we review the whole record in the light most favorable to the judgment to determine whether there is substantial evidence to support the conviction. (*Vines*, at p. 869; *Johnson I*, at p. 578.) Substantial evidence is evidence that is reasonable, credible, and of solid value such that a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 660.) We do not reweigh the evidence, resolve

9

conflicts in the evidence, or reevaluate the credibility of witnesses.  (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13.)

B

The proper interpretation of a statute is a question of law, which we determine independently, or de novo.  (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)  The fundamental purpose of statutory interpretation is to ascertain the intent of the Legislature in enacting the statute.  (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265 (*Cornett*); *People v. Farley* (2009) 46 Cal.4th 1053, 1118.)  We begin by considering the actual language of the statute, giving its words their usual and ordinary meaning.  (*Cornett*, at p. 1265; *Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1216 (*Alcala*); *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901 (*Robert L.*).)  We construe the words of a statute as a whole and within the overall statutory scheme to effectuate the intent of the Legislature.  (*Robert L.*, at p. 901.)  If the words of the statute are unambiguous, the plain meaning of the statute governs and there is no need for construction.  (*Cornett*, at p. 1265; *People v. Johnson* (2013) 57 Cal.4th 250, 260 (*Johnson II*); *People v. Hendrix* (1997) 16 Cal.4th 508, 512 (*Hendrix*).)  However, if the statutory language is ambiguous, we look to other indicia of the intent of the Legislature.  (*Cornett*, at p. 1265; *People v. Floyd* (2003) 31 Cal.4th 179, 187-188.)  Those other indicia may include the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.  (*Cornett*, at p. 1265.)  We do not interpret ambiguities in statutory or initiative language in a

10

defendant's favor if that interpretation would create an absurd result or be inconsistent with the intent of the Legislature. (*People v. Cruz* (1996) 13 Cal.4th 764, 782-783.)

C

Jacobo was charged with and convicted on seven counts of aggravated human trafficking under section 236.1(c)(2), which provides in pertinent part:

> "A person who causes, induces, or *persuades, or attempts to* cause, induce, or *persuade,* a person who is *a minor* at the time of commission of the offense *to engage in a commercial sex act, with the intent to effect* or maintain *a violation of Section . . . 266i . . .* is guilty of *human trafficking.* A violation of this subdivision is punishable by imprisonment in the state prison as follows:
>
> "(1) Five, 8, or 12 years and a fine of not more than five hundred thousand dollars ($500,000).
>
> "(2) Fifteen years to life and a fine of not more than five hundred thousand dollars ($500,000) when the offense involves force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person." (Italics added.)

Section 236.1, subdivision (h)(2) defines the phrase "commercial sex act" as meaning "sexual conduct on account of which anything of value is given or received by a person."

The offense of pandering under section 266i consists of *any* of the six listed acts described in section 266i, subdivisions (a)(1) through (a)(6). Section 266i was originally enacted in 1953 (Stats. 1953, ch. 32, § 4, p. 635) and now provides:

> "(a) Except as provided in subdivision (b), any person who does *any of the following is* guilty of *pandering*, a felony, and shall be punishable by imprisonment in the state prison for three, four, or six years:
>
> "(1) Procures another person for the purpose of prostitution.

11

"(2) *By* promises, threats, violence, or by *any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute*.

"(3) Procures for another person a place as an inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state.

"(4) By promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages an inmate of a house of prostitution, or any other place in which prostitution is encouraged or allowed, to remain therein as an inmate.

"(5) By fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procures another person for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution.

"(6) Receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, another person for the purpose of prostitution, or to come into this state or leave this state for the purpose of prostitution."[4]  (Italics added.)

Under section 266i, subdivision (a)(2) (hereinafter section 266i(a)(2)), persuading or encouraging another person "to become a prostitute" includes "recruiting someone to enter the prostitution trade for the first time." (*People v. Zambia* (2011) 51 Cal.4th 965, 973 (*Zambia*).)

D

After the prosecution completed its case in chief, Jacobo filed a section 1118.1 motion for acquittal on the seven section 236.1(c)(2) aggravated human trafficking charges on the ground that there was insufficient evidence to support a finding that he

---

[4]    The punishment for pandering under section 266i is increased when the acts described in subdivision (a) are committed with another person who is a minor under the age of 16.  (§ 266i, subd. (b)(2).)

12

intended to pander the minors for purposes of prostitution with other men and not solely himself. The trial court denied Jacobo's section 1118.1 motion for acquittal. In closing, the prosecution argued that Jacobo was guilty of section 236.1(c)(2) aggravated human trafficking under the section 266i(a)(2) theory of pandering, and the court instructed the jury thereon with CALCRIM No. 1151 that the prosecution must prove "[Jacobo] used promises or any device or scheme to cause, persuade, encourage, induce [the seven alleged victims] to become a prostitute, although the defendant's efforts need not have been successful . . . ."[5] The jury was further instructed that "[a] prostitute is a person who engages in sexual intercourse or any lewd act with another person in exchange for money or other compensation."

E

Contrary to Jacobo's assertion, pandering under section 266i(a)(2) does *not* require that the panderer intend to procure another person (i.e., the victim) for a third person. As quoted *ante*, section 266i(a)(2) provides that one form of pandering is committed when a person "by any device or scheme, causes, induces, *persuades, or encourages another person to become a prostitute*." (Italics added.) That statutory language does not contain any reference to a third person. Rather, under the plain meaning of its language, section 266i(a)(2) provides that pandering can be committed when only two persons are involved—namely, the panderer and the victim who the panderer persuades or encourages to become a prostitute. Giving the words of section 266i(a)(2) their usual and

_____

[5]     The jury was also instructed that "[p]andering requires that an intended act of prostitution be with someone other than the defendant."

13

ordinary meaning and construing section 266i as a whole, we conclude the words of section 266i(a)(2) are unambiguous and therefore their plain meaning governs and no further construction of that statute is required.  (*Cornett*, *supra*, 53 Cal.4th at p. 1265; *Alcala*, *supra*, 43 Cal.4th at p. 1216; *Robert L.*, *supra*, 30 Cal.4th at p. 901;  *Johnson II*, *supra*, 57 Cal.4th at p. 260; *Hendrix*, *supra*, 16 Cal.4th at p. 512.)

Given that plain meaning of the words of section 266i(a)(2), we conclude that if a panderer persuades or encourages the victim to become a person who engages in sexual intercourse or any lewd act with the panderer in exchange for money, the panderer can be found guilty of section 266i(a)(2) pandering even if the panderer intended to persuade or encourage the victim to engage in sexual intercourse or any lewd act for money solely with him or her and not any third person.  As the People suggest, the Legislature could reasonably believe that the offense of section 266i(a)(2) pandering should apply to both those panderers who lure victims to become prostitutes for others as well as those panderers who lure victims to become prostitutes solely for their own sexual gratification. *Zambia*, *supra*, 51 Cal.4th 965, cited by Jacobo, addressed the question of whether the offense of pandering under section 266i(a)(2) can include the encouragement of a currently active prostitute to work instead for the panderer.  (*Id*. at pp. 970-971, 981.) Therefore, *Zambia* is factually and legally inapposite to this case and does not persuade us to reach a contrary conclusion.

Although Jacobo cites *People v. Roderigas* (1874) 49 Cal. 9 (*Roderigas*) as authority showing California requires a third person for the offense of pandering, that case is inapposite because it dealt with a statute (§ 266), which was originally enacted in

14

1872 and had different language from section 266i, which was not enacted until 1953. In *Roderigas*, the court construed the language of section 266, which provided that a person who "procures any female to have illicit carnal connection with any man" was guilty of pandering under section 266. (*Id.* at p. 11.) Focusing on the word "procures," *Roderigas* stated that its use in section 266 "refers to the act of a person 'who procures the gratification of the passion of lewdness for another.' " (*Ibid.*) The court concluded that "[t]o 'procure a female to have illicit carnal connection with any man,' is the offense of a procurer or procuress—of a pander. This is the natural meaning of the words—the fair import of the terms of the statute . . . ." (*Ibid.*) *Roderigas* rejected the People's argument that section 266 pandering included a seducer's procurement of a theretofore chaste female to have illicit carnal connection with himself. (*Ibid.*) It concluded that the defendant cannot "be considered to have been both procurer and seducer at the same time." (*Ibid.*)

Assuming arguendo that *Roderigas*'s holding remains valid today regarding its construction of the term "procure" in the current version of section 266,[6] we are not bound by its construction of section 266 pandering in this case because Jacobo was not

---

[6]   Section 266 currently provides: "Every person who inveigles or entices any unmarried female, of previous chaste character, under the age of 18 years, into any house of ill fame, or of assignation, or elsewhere, for the purpose of prostitution, or to have illicit carnal connection with any man; and every person who aids or assists in such inveiglement or enticement; and every person who, by any false pretenses, false representation, or other fraudulent means, *procures any female to have illicit carnal connection with any man*, is punishable by imprisonment in the state prison, or by imprisonment in a county jail not exceeding one year, or by a fine not exceeding two thousand dollars ($2,000.00), or by both such fine and imprisonment." (Italics added.)

15

charged with, nor convicted of, section 266 pandering. On the contrary, he was convicted of section 236.1(c)(2) aggravated human trafficking under the theory of section 266i(a)(2) pandering, which statute does not use the term "procure" nor does it expressly require the procurement of a female to have an illicit carnal connection "with any man" as section 266 requires. Therefore, *Roderigas*'s interpretation of the 1874 version of section 266 pandering does not control our interpretation of the current version of section 266i(a)(2) pandering. To the extent Jacobo argues *Roderigas*'s interpretation of the offense of "pandering" under section 266 controls all subsequently-enacted statutes defining offenses of "pandering" (e.g., § 266i(a)(2)) regardless of their different language, we reject that argument as one based on an ill-founded attempt to create or enforce common law crimes.

In California, there are no common law crimes. (*People v. Smith* (1997) 57 Cal.App.4th 1470, 1480.) Rather, "subject to the constitutional prohibition against cruel and unusual punishment, the power to define crimes and fix penalties is vested exclusively in the legislative branch." (*Keeler v. Superior Court* (1970) 2 Cal.3d 619, 631.) Accordingly, it is the Legislature through its enactments of criminal statutes, and not a court through common law decisions, that decides what acts constitute criminal offenses. Therefore, we reject Jacobo's apparent assertion that *Roderigas* established a binding common law principle of what an offense of pandering can, and cannot, constitute.

Because the Legislature in 1953 enacted a new statute, namely section 266i, that defines six variants of the offense of "pandering," we are not bound, nor are we

16

persuaded, by *Roderigas*'s interpretation of the offense of pandering under section 266 in interpreting the language of section 266i(a)(2) in this case. Accordingly, as discussed *ante*, we conclude the plain meaning of the words of section 266i(a)(2) do not require a third person for its offense of pandering to be committed. Contrary to *Roderigas*'s conclusion regarding section 266, under section 266i(a)(2) Jacobo can be "both procurer [or panderer] and seducer at the same time" and thereby commit the offense of pandering under that statute. (Cf. *Roderigas*, *supra*, 49 Cal. at p. 11.)

Although Jacobo also cites *People v. Dixon* (2011) 191 Cal.App.4th 1154 in support of his argument that section 266i(a)(2) requires a third person for the offense of pandering, we are not bound by *Dixon*'s holding and disagree with its reasoning. Citing *Roderigas*, as well as common dictionary definitions of "pandering," *Dixon* concluded that section 266i(a)(2) pandering requires that a panderer procure the gratification of the passion of lewdness of a prostitute for another (i.e., a third person). (*Dixon*, at pp. 1156, 1159-1160.) Accordingly, *Dixon* reversed the defendant's conviction for pandering under section 266i(a)(2) because he offered the victim money to have sex only with him. (*Id*. at p. 1160.) However, *Dixon*'s reasoning omitted an analysis of the plain meaning of the words of section 266i(a)(2) and, in effect, relied on *Roderigas*'s common law definition of the offense of pandering. Moreover, to the extent *Dixon* considered the actual language of section 266i(a)(2), it observed that its language "is silent on [the] issue" of whether a third person is required for its defined offense of pandering. (*Dixon*, at p. 1158.) In our view, that "silence" supports our conclusion that section 266i(a)(2) can be committed without a third person. If the Legislature had intended to require the

17

persuasion or encouragement of another person (i.e., a victim) to become a prostitute for a third person, it presumably would have expressly included that third person requirement within the plain language of that statute. Because it did not, we infer it did not intend to include such a requirement in its definition of section 266i(a)(2) pandering. We are unpersuaded by *Dixon*'s reasoning and reject its conclusion that section 266i(a)(2) requires a third person to commit the offense of pandering.

Jacobo does not dispute, and based on our review of the record we conclude, that there is substantial evidence to support a finding that he persuaded, or attempted to persuade, each of the seven minors in this case to engage in a commercial sex act with the intent to persuade or encourage them to become a prostitute with only himself, which under our interpretation of the plain language of section 266i(a)(2) constitutes the offense of pandering. Accordingly, we conclude there is substantial evidence to support Jacobo's seven convictions of aggravated human trafficking (§ 236.1(c)(2)). Therefore, the trial court correctly denied his section 1118.1 motion for acquittal on the seven section 236.1(c)(2) aggravated human trafficking charges.

18

## II

*Substantial Evidence to Support Jacobo's Convictions*
*for Aggravated Human Trafficking Based on Fraud or Deceit*

Jacobo alternatively contends there is insufficient evidence to support his convictions for aggravated human trafficking (§ 236.1(c)(2)) under a pandering theory because the evidence does not show that his alleged victims did not consent to a commercial sex act due to fraud in fact. He argues the evidence shows, at most, their lack of consent was due to fraud in the inducement, which is insufficient to support a section 236.1(c)(2) finding of fraud or deceit.

### A

Section 236.1(c)(2) provides for greater punishment when the offense of human trafficking involves deceit and is therefore an aggravated form of that offense. The punishment for aggravated human trafficking is "[f]ifteen years to life and a fine of not more than five hundred thousand dollars ($500,000) when the offense involves force, fear, fraud, *deceit*, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person." (§ 236.1(c)(2), italics added.) The third amended information alleged that each of Jacobo's seven aggravated human trafficking offenses involved force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person.

After the preliminary hearings in this case, Jacobo filed section 995 motions to dismiss the seven section 236.1(c)(2) counts on the ground that there was insufficient evidence to support findings that the alleged aggravated human trafficking offenses

19

involved fraud in fact that could have precluded his victims' consent.[7] He argued the evidence showed, at most, that his victims' consent was obtained by fraud in the inducement, which is inadequate fraud for a section 236.1(c)(2) finding. The prosecution opposed the motions to dismiss, arguing that the lack of the victims' consent is not a defense to a section 236.1(c)(2) aggravated human trafficking charge and the alleged offenses in this case involved *deceit*, which is different from fraud.

The court denied the motions to dismiss. The court reasoned that because the lack of consent is not an element of a section 236.1(c)(2) offense, Jacobo's arguments regarding fraud in fact and fraud in the inducement were irrelevant. The court further stated that deceit and fraud under section 236.1(c)(2) were not necessarily synonymous and have different definitions and there was evidence of deceit in this case. At trial, the court denied Jacobo's renewed section 995 motion to dismiss the section 236.1(c)(2) charges.

The trial court instructed with CALCRIM No. 1244 on the offense of section 236.1(c)(2) aggravated human trafficking. In particular, the court instructed that "[t]he other person's consent is not a defense to this crime." The court also instructed with CALCRIM No. 3184 that if the jury found Jacobo guilty of the seven section 236.1(c)(2) aggravated human trafficking charges, it must then decide whether the prosecution had proved that he "used deceit" in committing those offenses. The court defined "deceit" as

---

[7]    This case originally consisted of two separate cases (Riverside County Sup. Ct. case Nos. INF1501122 and INF1500443) for which separate preliminary hearings were conducted. Those cases were subsequently consolidated by the court before trial.

20

"the action or practice of deceiving someone by concealing or misrepresenting the truth." The jury found true the section 236.1(c)(2) allegations that Jacobo used deceit in committing the seven aggravated human trafficking offenses.

B

Jacobo's argument that there is insufficient evidence to support his seven convictions of aggravated human trafficking (§ 236.1(c)(2)) is premised on the faulty assumption that his minor victims' lack of consent to engage in a commercial sex act is an element of that offense. Based on the plain language of that statute, we conclude a victim's lack of consent is *not* an element of that offense. (*Cornett*, *supra*, 53 Cal.4th at p. 1265 [if words of statute are unambiguous, plain meaning of language controls]; *Johnson II*, *supra*, 57 Cal.4th at p. 260 [same]; *Alcala*, *supra*, 43 Cal.4th at p. 1216 [court must give words of statute their usual and ordinary meaning].) Rather, aggravated human trafficking under section 236.1(c)(2) is committed when a defendant "persuades," or "attempts to . . . persuade," a minor to engage in a commercial sex act, with the intent to violate section 266i (i.e., pandering). Because a mere attempt to persuade a minor to commit a commercial sex act with the requisite intent is sufficient to constitute aggravated human trafficking, that offense can be committed without the minor actually committing a commercial sex act. Therefore, the plain language of the statute shows that the lack of the victim's consent to a commercial sex act is not an element of that offense. (§ 236.1(c)(2).)

Our construction of the plain language of section 236.1(c)(2) is further supported by section 236.1, subdivision (e), which provides: "Consent by a victim of human

21

trafficking who is a minor at the time of the commission of the offense is not a defense to a criminal prosecution under this section."  If the Legislature had intended, as Jacobo asserts, that the prosecution be required to prove that a minor victim did not consent to a commercial sex act, then the Legislature presumably would not have expressly included section 236.1, subdivision (e), which provision would be unnecessary and arguably inconsistent with such a requirement.  (Cf. *People v. Soto* (2011) 51 Cal.4th 229, 248 [because consent is not a defense to aggravated lewd act on a child under age 14, "[t]he prosecution need not prove that a lewd act committed by use of force, violence, duress, menace, or fear was also against the victim's will"].)  Accordingly, we conclude the trial court correctly concluded that the lack of the victims' consent to a commercial sex act is not an element of section 236.1(c)(2) aggravated human trafficking.

Furthermore, we reject Jacobo's assertion that the lack of a victim's consent is an element of aggravated human trafficking under section 236.1(c)(2) because it requires involvement of fraud or deceit, which necessarily implies that the victim's consent is overcome by fraud or deceit.  We disagree.  Our construction of the plain language of section 236.1(c)(2) is that the offense of aggravated human trafficking is committed when a defendant uses fraud or deceit to persuade, or attempt to persuade, a minor victim to engage in a commercial sex act, with the intent to violate section 266i (i.e., pandering). Because, as discussed *ante*, an attempt to persuade a minor to engage in a commercial sex act does not require that the victim actually consent to, or engage in, a commercial sex act, aggravated human trafficking can be committed by the use of fraud or deceit in attempting to persuade the victim to engage in commercial sex activity.  (§ 236.1(c)(2).)

22

Therefore, contrary to Jacobo's assertion, the requirement of section 236.1(c)(2) that fraud or deceit be involved in committing the offense of aggravated human trafficking does not reasonably imply that the victim's lack of consent to engage in a commercial sex act is an element of the aggravated form of that offense.

Furthermore, we reject Jacobo's argument that fraud and deceit are interchangeable in the context of section 236.1(c)(2). Jacobo does not cite in support of his argument any apposite case that interpreted a statute involving both terms "fraud" and "deceit." Rather, he cites *State ex rel. Wilson v. Superior Court* (2014) 227 Cal.App.4th 579, 600, interpreting section 550, subdivision (b), which prohibits the filing of fraudulent insurance claims. Although we assume that deceit in filing a fraudulent insurance claim may violate that statute, we cannot conclude, based on *Wilson*, that fraud and deceit in the context of section 236.1(c)(2) are necessarily interchangeable.[8]

In any event, as the People note, the jury was instructed only on *deceit* as a basis for a section 236.1(c)(2) finding of aggravated human trafficking. The court defined "deceit" as "the action or practice of deceiving someone by concealing or misrepresenting the truth." We conclude there is substantial evidence to support the jury's finding that Jacobo used deceit in persuading, or attempting to persuade, his seven minor victims to engage in a commercial sex act. In particular, as discussed *ante*, Jacobo used the fictional

---

[8]    Similarly, *Sixta v. Ochsner* (1960) 187 Cal.App.2d 485, 490, cited by Jacobo, involved a civil contract action and is therefore inapposite to this case. Accordingly, we are not persuaded by its general statement that the fact California courts have consistently used the terms "fraud" and "deceit" interchangeably necessarily makes those terms interchangeable under section 236.1(c)(2).

persona of Marlissa, whom he misrepresented to be an actual successful prostitute, in an attempt to persuade them to also become prostitutes and engage in commercial sex acts. By so doing, the jury reasonably concluded that Jacobo concealed or misrepresented the truth (i.e., used deceit) when he attempted to persuade his victims to engage in commercial sex acts. Accordingly, there is substantial evidence to support his seven section 236.1(c)(2) convictions for aggravated human trafficking.

III

*Substantial Evidence to Support Two of Jacobo's*
*Section 311.4, Subdivision (c) Convictions*

Jacobo contends there is insufficient evidence to support two of his convictions (counts 23 and 61) for using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)) because the underlying photographs do not depict the required sexual conduct. In particular, he argues the photographs do not show an improper exhibition of the minor's genital or pubic areas per section 311.4, subdivision (d)(1).

A

Counts 23 (victim G.M.) and 61 (victim Y.C.) charged Jacobo with using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)). Section 311.4, subdivision (c) provides:

> "Every person who, with knowledge that a person is a minor under
> the age of 18 years, or who, while in possession of any facts on the
> basis of which he or she should reasonably know that the person is a
> minor under the age of 18 years, knowingly promotes, employs,
> uses, persuades, induces, or coerces a minor under the age of 18
> years . . . to engage in or assist others to engage in either posing or
> modeling alone or with others for purposes of preparing any
> representation of information, data, or image, including, but not

24

limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film, filmstrip, or a live performance involving, *sexual conduct* by a minor under the age of 18 years alone or with other persons or animals, is guilty of a felony. . . ."  (Italics added.)

For purposes of section 311.4, subdivision (c), the term "sexual conduct" means "any of the following, whether actual or simulated:  sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd or lascivious manner, *exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer*, any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner, . . .  An act is simulated when it gives the appearance of being sexual conduct."  (§ 311.4, subd. (d)(1), italics added.)

In *People v. Kongs* (1994) 30 Cal.App.4th 1741 (*Kongs*), the court addressed the questions of whether the defendant in that case used or induced a minor to pose for purposes of preparing a film or photograph involving sexual conduct and whether there was sufficient evidence of exhibition of the genitals, pubic, or rectal area for the purpose of sexual stimulation of the viewer.  (*Id.* at p. 1753.)  In that case, the defendant argued there was insufficient sexual conduct because the genitals of the minor as shown in the photographs were covered.  (*Ibid.*)  First, *Kongs* concluded that a nude image of a minor's genitals is not required for a section 311.4, subdivision (c) offense.  (*Ibid.*)  Second,

25

*Kongs* set forth the following six factors for a trier of fact to consider in determining whether a photograph or other image is an "exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer" within the meaning of section 311.4, subdivision (d)(1):

> "1) whether the focal point is on the child's genitalia or pubic area;
>
> "2) whether the setting is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> "3) whether the child is in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> "4) whether the child is fully or partially clothed, or nude;
>
> "5) whether the child's conduct suggests sexual coyness or a willingness to engage in sexual activity;
>
> "6) whether the conduct is intended or designed to elicit a sexual response in the viewer." (*Kongs*, *supra*, 30 Cal.App.4th at pp. 1754-1755.)

*Kongs* stated that only the sixth factor is required for a finding of "sexual conduct" under section 311.4, subdivisions (c) and (d). (*Kongs*, *supra*, 30 Cal.App.4th at p. 1755.) The first five factors are simply other circumstances that the trier of fact may consider in determining whether there is such "sexual conduct." (*Ibid*.) *Kongs* stated, "[T]he determination [regarding whether there is sexual conduct under section 311.4, subdivision (c)] must be made based on the overall content of the visual depiction and the context of the child's conduct, taking into account the child's age." (*Kongs*, at p. 1755.)

B

Contrary to Jacobo's assertion, we conclude there is substantial evidence to support findings by the jury that the photographs of G.M. (exh. 40) and Y.C. (exh. 69)

26

depicted sexual conduct by those minors within the meaning of section 311.4, subdivisions (c) and (d)(1).  We have viewed the photograph of G.M. in exhibit 40, which was admitted to prove count 23.  That photograph shows G.M., who was then a 16-year-old minor, topless with her breasts exposed, wearing a thong bikini, and reaching for a penis, which is presumably Jacobo's.  Although the primary focal point of the photograph may not have been G.M.'s genitals or pubic area, which was at least partially obscured by her arm, the setting and her pose, attire, and conduct shown in the photograph supports a reasonable inference that she was preparing for either sexual intercourse or another lewd act with Jacobo.  Many of the six *Kongs* factors support a finding that the photograph of G.M. is an "exhibition of the genitals or pubic . . . area for the purpose of sexual stimulation of the viewer" within the meaning of section 311.4, subdivision (d)(1).  (*Kongs*, *supra*, 30 Cal.App.4th at pp. 1754-1755.)

A trier of fact could reasonably view the photograph as depicting part of her genitals or pubic area (i.e., that part not obscured by her arm), albeit covered mostly by her thong bikini, and possibly showing pubic hairs.  A trier of fact also could reasonably find that the setting is sexually suggestive as the photograph shows G.M. standing and leaning over a bed.  A trier of fact also could reasonably find that her pose was unnatural and her attire was inappropriate for a 16-year-old.  G.M. was only partially clothed, wearing only a thong bikini.  Her conduct suggests her willingness to engage in sexual activity.  Finally, a trier of fact could reasonably find that the conduct depicted in the photograph was intended to elicit a sexual response in the viewer.

27

Based on our consideration of the six *Kongs* factors, we conclude there is substantial evidence to support the jury's findings that the photograph in exhibit 40 exhibited G.M.'s genitals or pubic area for the purpose of sexual stimulation of the viewer within the meaning of section 311.4, subdivision (d)(1) and therefore involved sexual conduct within the meaning of section 311.4, subdivision (c). (*Kongs*, *supra*, 30 Cal.App.4th at pp. 1754-1755; cf. *People v. Spurlock* (2003) 114 Cal.App.4th 1122, 1128, 1133-1134 (*Spurlock*) [substantial evidence supports finding of section 311.4, subdivision (c) sexual conduct where photograph of 15-year-old girl shows her in bra and underpants, sitting on floor with legs splayed]; *United States v. Knox* (3d Cir. 1994) 32 F.3d 733, 746, 754 (*Knox*) [videotapes of minors that zoomed in on their clothed genital areas constituted lascivious exhibition of genitals or pubic area under federal statute].) Accordingly, there is substantial evidence to support Jacobo's conviction on count 23. To the extent Jacobo argues the photograph could be viewed to support a contrary conclusion, he misconstrues and/or misapplies the substantial evidence standard of review. (*Vines*, *supra*, 51 Cal.4th at p. 869; *Johnson I*, *supra*, 26 Cal.3d at p. 578.)

Regarding count 61, we have viewed the photograph of Y.C. in exhibit 69. That photograph shows Y.C., who was then a 14-year-old minor, in a reclined pose on a bed, facing the camera, and smiling. She is wearing bikini underwear and pulling up her bra to expose her breasts. Applying the six *Kongs* factors, we conclude there is substantial evidence to support a finding that the photograph in exhibit 69 exhibited Y.C.'s genitals or pubic area for the purpose of sexual stimulation of the viewer within the meaning of section 311.4, subdivision (d)(1). A trier of fact could reasonably view the photograph as

28

depicting her genitals or pubic area, albeit covered by her bikini underwear, which was possibly a focal point of the photograph. A trier of fact also could reasonably find that the setting is sexually suggestive as the photograph shows Y.C. reclined on a bed. A trier of fact also could reasonably find that her pose was unnatural and her attire was inappropriate for a 14 year old. Y.C. was smiling and only partially clothed, wearing bikini underwear and a bra that she pulled up to expose her breasts. Her conduct suggests her willingness to engage in sexual activity. Finally, a trier of fact could reasonably find that the conduct depicted in the photograph was intended to elicit a sexual response in the viewer.

Based on our consideration of the six *Kongs* factors, we conclude there is substantial evidence to support the jury's findings that the photograph in exhibit 69 exhibited Y.C.'s genitals or pubic area for the purpose of sexual stimulation of the viewer within the meaning of section 311.4, subdivision (d)(1) and therefore involved sexual conduct within the meaning of section 311.4, subdivision (c). (*Kongs*, *supra*, 30 Cal.App.4th at pp. 1754-1755; cf. *Spurlock*, *supra*, 114 Cal.App.4th at pp. 1128, 1133-1134; *Knox*, *supra*, 32 F.3d at pp. 746, 754.) Accordingly, there is substantial evidence to support Jacobo's conviction on count 61. To the extent Jacobo argues the photograph could be viewed to support a contrary conclusion, he misconstrues and/or misapplies the substantial evidence standard of review. (*Vines*, *supra*, 51 Cal.4th at p. 869; *Johnson I*, *supra*, 26 Cal.3d at p. 578.)

29

IV

*Substantial Evidence to Support Remainder of Jacobo's*
*Section 311.4, Subdivision (c) Convictions*

Jacobo contends there is insufficient evidence to support the remainder of his convictions (counts 26-27, 37, 48-52, and 62) for using a minor to perform posing or modeling of sexual conduct (§ 311.4, subd. (c)) because he did not direct them to pose or model. He argues that because the minors were unaware they were being videotaped or photographed, there is insufficient evidence to find they "pose[d] or model[ed]" within the meaning of section 311.4, subdivision (c).

A

As quoted *ante*, section 311.4, subdivision (c) provides in pertinent part:

> "Every person who, with knowledge that a person is a minor under the age of 18 years, or who, while in possession of any facts on the basis of which he or she should reasonably know that the person is a minor under the age of 18 years, *knowingly promotes, employs, uses, persuades, induces, or coerces a minor under the age of 18 years . . . to engage in or assist others to engage in either posing or modeling* alone or with others *for purposes of preparing any* representation of information, data, or image, including, but not limited to, any film, filmstrip, *photograph*, negative, slide, photocopy, *videotape*, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment *or any other computer-generated image that contains or incorporates* in any manner, any film, filmstrip, or *a live performance involving, sexual conduct* by a minor under the age of 18 years alone or with other persons or animals, is guilty of a felony. . . ."  (Italics added.)

The trial court instructed with CALCRIM No. 1144 on the section 311.4, subdivision (c) offense of using a minor to perform posing or modeling of sexual conduct as follows:

30

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant *used or persuaded or induced a minor* who was under 18 years old at the time *to pose or model* or assist others to pose or model, alone or with others; [¶] The defendant knew that he was using or persuading or inducing a minor of that age to pose or model or assist others to pose or model;

"2. The purpose of the posing or modeling was to prepare matter containing sexual conduct;

"3. The minor participated in the sexual conduct alone, or with other persons;

"4. The defendant was aware of the character of the matter or live conduct; [¶] AND

"5. The defendant knew, or reasonably should have known, based on facts of which he was aware, that the minor was under 18 years of age[.] [¶] . . . [¶]

"Sexual conduct means actual or simulated sexual intercourse or oral copulation or anal oral copulation or exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer. An act is simulated when it gives the appearance of being sexual conduct." (Italics added.)

In *People v. Hobbs* (2007) 152 Cal.App.4th 1 (*Hobbs*), the court addressed the question of whether section 311.4, subdivision (c) requires that the defendant direct a minor to pose or model. (*Hobbs*, at p. 5.) In that case, the defendant surreptitiously filmed girls in a high school locker room with a hidden camera and used cones, caution tape, and signs to block off those lockers that were outside of his camera's range. (*Id*. at p. 4.) His film showed the girls changing into and out of their bathing suits. (*Ibid*.) On appeal, the defendant argued there was insufficient evidence to support his section 311.4, subdivision (c) convictions because that statute required his victims to engage in posing

31

or modeling at his direction. (*Hobbs*, at p. 5.) *Hobbs* rejected that argument, noting the language of section 311.4, subdivision (c) does not contain any requirement that the posing or modeling be at the direction of the defendant, but instead may be violated if the defendant merely "uses" them to engage in posing or modeling. (*Id*. at pp. 5-6.)

The court also noted that the defendant posed his victims without having to actually direct them in person by his use of cones, caution tape, and signs to position them for his surreptitious filming of them. (*Hobbs*, *supra*, 152 Cal.App.4th at p. 7.) In a dissenting opinion, Justice Richli disagreed with the majority opinion and interpreted the word "posing," as used in section 311.4, subdivision (c), as requiring the minor to knowingly pose for the defendant based on at least some interaction with the defendant. (*Hobbs*, at pp. 9-11 (dis. opn. of Richli, J.).)

In *People v. Haraszewski* (2012) 203 Cal.App.4th 924 (*Haraszewski*), we agreed with the majority opinion's reasoning in *Hobbs* and concluded that section 311.4, subdivision (c) does not require that the posing or modeling be at the direction of the defendant. (*Haraszewski*, *supra*, at p. 938.) We further reasoned that the language of section 311.4, subdivision (c) did not show any legislative intent that the defendant personally direct the minor to pose or model. (*Haraszewski*, *supra*, at pp. 936-937.) In that case, the defendant and a 12-year-old boy went to a nude beach and, at the defendant's suggestion, the boy took off his clothes. (*Id*. at p. 940.) The defendant then photographed and videotaped the boy in the nude. (*Ibid*.) We concluded there was substantial evidence to support the defendant's section 311.4, subdivision (c) conviction. (*Haraszewski*, *supra*, at p. 940.)

32

B

In arguing there is insufficient evidence to support his section 311.4, subdivision (c) convictions, Jacobo cites the dissenting opinion in *Hobbs* and suggests that we should reject the majority opinion in *Hobbs* and our own opinion in *Haraszewski* and conclude that section 311.4, subdivision (c) requires a minor to knowingly and actively pose or model for the defendant. He argues that where a minor is surreptitiously filmed without his or her knowledge, there can be no violation of section 311.4, subdivision (c). We disagree and instead follow the persuasive reasoning of the majority opinion in *Hobbs* and our own opinion in *Haraszewski*. Contrary to Jacobo's assertion, we conclude that section 311.4, subdivision (c) does not require a minor to knowingly pose or model for the defendant or even be aware that the defendant is photographing or filming him or her. (*Hobbs*, *supra*, 152 Cal.App.4th at pp. 5-7; *Haraszewski*, *supra*, 203 Cal.App.4th at p. 938.) Here, Jacobo, by using the fictional persona Marlissa, persuaded the minors to become prostitutes and took them to motel rooms where he photographed and filmed them as described *ante*.

Regardless of whether or not those minors were aware Jacobo was photographing or filming them or knowingly and actively posed for him or consented to pose for him, there is substantial evidence to support findings that he, at a minimum, "use[d]" them to pose or model within the meaning of section 311.4, subdivision (c) by arranging for them to be at those locations and in those positions at the time he photographed and filmed

33

them.  (Cf. *Hobbs*, *supra*, 152 Cal.App.4th at pp. 5-7.)  Accordingly, there is substantial evidence to support his convictions on counts 26-27, 37, 48-52, and 62.[9]

V

*Section 288.2, Subdivision (a) Does Not Violate the Commerce Clause*

Jacobo contends his convictions on counts 12-16, 32, 44-46, 58, and 59 for sending harmful matter to a minor (§ 288.2, subd. (a)) must be reversed because section 288.2, subdivision (a) violates the commerce clause of the United States Constitution.  In particular, he argues we should abandon our opinion in *Hatch v. Superior Court* (2000) 80 Cal.App.4th 170 (*Hatch*), reject the opinions of other courts in *People v. Hsu* (2000) 82 Cal.App.4th 976 (*Hsu*), and *People v. Garelick* (2008) 161 Cal.App.4th 1107 (*Garelick*), and conclude that section 288.2, subdivision (a) improperly regulates conduct outside of California, imposes a substantial burden on interstate commerce, and that burden outweighs any benefit of the statute in protecting minors.

A

To prevail on a facial challenge to the constitutionality of a statute as unduly overbroad, an appellant must show that statute is overbroad and invalid in all of its applications.  (*United States v. Salerno* (1987) 481 U.S. 739, 745 (*Salerno*); *Broadrick v. Oklahoma* (1973) 413 U.S. 601, 612.)  That burden on appeal is a heavy one.  (*Salerno*, at p. 745; *People v. Fuiava* (2012) 53 Cal.4th 622, 696.)  "[T]he challenger must establish that no set of circumstances exists under which [the statute] would be valid.  The fact that

---

9      To the extent Jacobo also challenges his section 311.4, subdivision (c) convictions on counts 23 and 61 on the same basis, we likewise conclude there is substantial evidence to support those convictions.

34

[the statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." (*Salerno*, at p. 745.)  Alternatively stated, "[a] facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual.  [Citation.]  ' "To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . .  Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." ' " (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)

The commerce clause of the federal Constitution gives Congress the power to enact laws "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  (U.S. Const., art. I, § 8, cl. 3.)  Although the language of the commerce clause does not impose any express limits on the authority of states to regulate such commerce, the United States Supreme Court has held that "the commerce clause also limits the states' power to regulate both domestic interstate and foreign commerce, whether or not Congress has acted.  [Citations.]" (*Pacific Merchant Shipping Assn. v. Voss* (1995) 12 Cal.4th 503, 514.)  That restriction on the states' power is commonly referred to as the "negative" or "dormant" commerce clause.  (*Id*. at p. 515; *Barclays Bank PLC v. Franchise Tax Bd. of California* (1994) 512 U.S. 298, 310, fn. 9.)

B

Section 288.2, subdivision (a) provides:

> "(1)  Every person who knows, should have known, or believes that another person is a minor, and who knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by any means, including by physical delivery, telephone, electronic communication, or in person, any harmful matter that depicts a minor or minors engaging in sexual conduct, to the other person with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the minor, and with the intent or for the purposes of engaging in sexual intercourse, sodomy, or oral copulation with the other person, or with the intent that either person touch an intimate body part of the other, is guilty of a misdemeanor, punishable by imprisonment in a county jail not exceeding one year, or is guilty of a felony, punishable by imprisonment in the state prison for two, three, or five years.

> "(2)  If the matter used by the person is harmful matter but does not include a depiction or depictions of a minor or minors engaged in sexual conduct, the offense is punishable by imprisonment in a county jail not exceeding one year, by imprisonment in the state prison for 16 months, or two or three years."

Section 313, subdivision (a) defined "harmful material" as "matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors. . . ."

C

In *Hatch*, we rejected the defendant's facial challenge to the constitutionality of section 288.2 under the commerce clause.  (*Hatch*, *supra*, 80 Cal.App.4th at pp. 193-197.)  The defendant in *Hatch* relied on *American Libraries Ass'n v. Pataki* (S.D.N.Y.

36

1997) 969 F.Supp. 160 (*Pataki*), which concluded a New York statute similar to section 288.2 unduly burdened the commerce clause because (1) the nature of the Internet requires national, rather than state-by-state, regulation, and (2) the statute operated extraterritorially and thereby imposed New York policies on other states. (*Pataki*, at pp. 174, 177, 182-183.) In *Hatch*, we rejected both arguments. (*Hatch*, at pp. 194-197.) Rejecting the argument that section 288.2 violates the commerce clause because the Internet requires national regulation, we stated:

> "While it may be true that Internet communications routinely pass along interstate lines, we do not believe this general proposition can be employed, as suggested by Hatch, to insulate pedophiles from prosecution simply *by reason of* their usage of modern technology. Such a view of what our Constitution requires is, in our opinion, completely inappropriate." (*Hatch*, *supra*, 80 Cal.App.4th at p. 195, fn. omitted.)

We further stated, "While a ban on the simple *communication* of certain materials may interfere with an adult's legitimate rights, a ban on communication of specified matter to a minor *for purposes of seduction* can only affect the rights of the very narrow class of adults who intend to engage in sex with minors." (*Ibid.*) Regarding section 288.2's extraterritorial operation, we stated, "[H]ere there is no reason to suppose California would attempt to impose its policies on other states in light of the relevant California penal statutes covering jurisdiction over public offenses [citations], which generally bar punishment for wholly extraterritorial offenses." (*Hatch*, at p. 197, fn. omitted.) Accordingly, we concluded:

> "In short, given the requirement that those charged must intend to seduce and the additional requirement that they must commit at least an attempt here, no rational analysis supports the proposition section

37

288.2 imposes any burden on interstate commerce, as (1) such burdens as may exist are not upon any protected right of commerce at all, and (2) enforcement of the statute is not likely to significantly, or at all, burden interstate commerce." (*Hatch*, at p. 197.)

Therefore, we rejected the defendant's facial challenge to section 288.2 on the ground that it unduly burdens interstate commerce.[10] (*Ibid.*)

Applying reasoning similar to our reasoning in *Hatch*, the court in *Hsu* also rejected a facial challenge to section 288.2 on the ground that it unduly burdened interstate commerce and thereby violated the commerce clause. (*Hsu, supra*, 82 Cal.App.4th at pp. 983-985.) Adopting the reasoning in *Hatch* and *Hsu*, the court in *Garelick* likewise rejected a facial challenge to section 288.2 on the ground that it unduly burdened interstate commerce and thereby violated the commerce clause. (*Garelick, supra*, 161 Cal.App.4th at pp. 1121-1122.)

D

Jacobo argues that we should reject the reasoning and holdings in *Hatch*, *Hsu*, and *Garelick*, adopt the reasoning of *Pataki* and Justice McDonald's concurring and dissenting opinion in *Hatch*, and conclude that section 288.2, subdivision (a) improperly regulates conduct outside of California, imposes a substantial burden on interstate commerce, and that burden outweighs any benefit of the statute in protecting minors. He

---

10    In a concurring and dissenting opinion, Associate Justice Alex C. McDonald disagreed with the majority's reasoning in *Hatch* and stated his belief that section 288.2 was unconstitutional under the commerce clause because of its extraterritorial effect and the need for uniform national regulation of the Internet. (*Hatch, supra*, 80 Cal.App.4th at pp. 212-217 (conc. & dis. opn. of McDonald, J.).)

also argues the Internet should only be regulated by the federal government.[11]  We decline to do so and adopt our reasoning in *Hatch*, as well as the reasoning in *Hsu* and *Garelick*.  (*Hatch*, *supra*, 80 Cal.App.4th at pp. 194-197; *Hsu*, *supra*, 82 Cal.App.4th at pp. 983-985; *Garelick*, *supra*, 161 Cal.App.4th at pp. 1121-1122.)  Accordingly, we conclude section 288.2, subdivision (a) does not unduly burden interstate commerce and therefore does not violate the commerce clause.

VI

*Section 288.2, Subdivision (a) Does Not Violate the First Amendment*

Similar to his commerce clause argument discussed *ante*, Jacobo contends his convictions for sending harmful matter to a minor (§ 288.2, subd. (a)) must be reversed because section 288.2, subdivision (a) is overbroad and violates the First Amendment to the United States Constitution.  In particular, he argues we should abandon our contrary opinion in *Hatch*, *supra*, 80 Cal.App.4th 170, reject the contrary opinions in *Hsu*, *supra*, 82 Cal.App.4th 976 and *Garelick*, *supra*, 161 Cal.App.4th 1107, and conclude that section 288.2, subdivision (a) improperly regulates legitimate speech directed at persons residing in other states that have a lower age of consent than in California and is not narrowly tailored to achieve California's interest in protecting minors from harm.

In *Hatch*, we rejected the defendant's argument that section 288.2 unduly chills otherwise protected speech.  (*Hatch*, *supra*, 80 Cal.App.4th at pp. 200-204.)  We stated:

---

11    The People assert Jacobo forfeited this argument by not first raising it below. However, because this issue presents a question of law on undisputed facts that may affect his substantial rights, we will address the merits of his argument.  (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394.)

39

"Section 288.2 is not directed at speech, but at the *activity* of attempting to seduce a minor. . . . Thus, the only chilling effect of section 288.2 is on pedophiles who intend that their statements will be acted upon by children. Given the intention with which they are made, such statements are not entitled to the extraordinary protection of the First Amendment[.]" (*Hatch*, *supra*, 80 Cal.App.4th at p. 203, fn. omitted.)

We concluded that "[b]ecause it is primarily conduct rather than speech that is subjected to regulation, the statute does not infringe upon the First Amendment." (*Id*. at pp. 203-204, fn. omitted.) In his concurring and dissenting opinion, Justice McDonald disagreed with the majority's reasoning in *Hatch* and stated his belief that section 288.2 was unconstitutional under the First Amendment because it criminalized potentially protected speech and the People had not shown there were no less restrictive means to achieve California's state interest. (*Id*. at pp. 224-225 (conc. & dis. opn. of McDonald, J.).)

In *Hsu*, the court likewise rejected a First Amendment challenge to section 288.2. (*Hsu*, *supra*, 82 Cal.App.4th at pp. 987-990.) However, in so doing, the court concluded section 288.2 regulated content-based speech, but that statute passed the strict scrutiny test because it served the compelling state interest of protecting children from harmful matter and it was narrowly drawn to serve that state interest. (*Ibid*.) In *Garelick*, the court adopted *Hsu*'s reasoning and concluded section 288.2 did not violate the First Amendment. (*Garelick*, *supra*, 161 Cal.App.4th at p. 1124.)

We are unpersuaded by Jacobo's argument that we should reject the reasoning in our majority opinion in *Hatch* and instead adopt the reasoning in Justice McDonald's

40

concurring and dissenting opinion.[12]  Accordingly, we adopt our reasoning in *Hatch* and

conclude section 288.2 does not violate the First Amendment.[13]  (*Hatch*, *supra*,

80 Cal.App.4th at pp. 203-204.)

VII

*Insufficient Evidence to Support Six of Jacobo's*
*Section 288.2, Subdivision (a)(1) Convictions*

Jacobo contends six of his convictions (counts 32, 44-46, and 58-59) for sending

harmful matter depicting a minor engaged in sexual conduct to a minor (§ 288.2, subd.

(a)(1)) should be reduced to convictions for sending harmful matter to a minor (§ 288.2,

subd. (a)(2)) because there is insufficient evidence to support findings that the

photographs related to those counts depicted a minor.  He argues that the photographs

related to five of those six counts (counts 44-46 and 58-59) depicted Claudia A., an adult,

and not a minor, and there was no evidence that any of the persons depicted in the

photograph related to the sixth count (count 32) were minors.  The People concede, and

we agree, there is insufficient evidence to support findings that those photographs

depicted minors and therefore those section 288.2, subdivision (a)(1) convictions (counts

---

12    We likewise are unpersuaded by Jacobo's argument that we should adopt the reasoning in *Cyberspace Communications, Inc. v. Engler* (E.D. Mich. 1999) 55 F.Supp.2d 737, 749-751, and *ACLU v. Johnson* (10th Cir. 1999) 194 F.3d 1149, 1158-1160, which cases concluded the Michigan and New Mexico statutes involved in those cases violated the First Amendment.

13    Assuming arguendo that section 288.2 regulates content-based speech, as Jacobo asserts, we nevertheless would adopt the reasoning in *Hsu* and *Garelick* and conclude that section 288.2 is narrowly tailored to serve California's compelling state interest in protecting children from harmful matter.  (*Hsu*, *supra*, 82 Cal.App.4th at pp. 987-990; *Garelick*, *supra*, 161 Cal.App.4th at p. 1124.)

32, 44-46, and 58-59) must, as Jacobo asserts, be reduced to section 288.2, subdivision (a)(2) convictions and the matter remanded for resentencing on those counts.

VIII

*Section 288.3, Subdivision (a) Is Not Unconstitutionally Vague*

Jacobo contends his 10 convictions (counts 3-6, 8-11, and 54-55) for contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a)) must be reversed because section 288.3, subdivision (a) is unconstitutionally vague. In particular, he argues that section 288.3, subdivision (a) is vague because it does not give adequate notice regarding what conduct violates it and because it gives law enforcement unfettered discretion to determine when it is violated.

A

Section 288.3 provides:

> "(a) Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section 207, 209, 261, 264.1, 273a, 286, 287, 288, 288.2, 289, 311.1, 311.2, 311.4 or 311.11, or former Section 288a, involving the minor shall be punished by imprisonment in the state prison for the term prescribed for an attempt to commit the intended offense.

> "(b) As used in this section, 'contacts or communicates with' shall include direct and indirect contact or communication that may be achieved personally or by use of an agent or agency, any print medium, any postal service, a common carrier or communication common carrier, any electronic communications system, or any telecommunications, wire, computer, or radio communications device or system."

B

In *People v. Keister* (2011) 198 Cal.App.4th 442 (*Keister*), the court rejected the defendant's argument that section 288.3 was void for vagueness. (*Keister*, at pp. 448-449.) The court cited *United States v. Williams* (2008) 553 U.S. 285, 305-306 (*Williams*), which stated that a statute is not rendered vague by the mere fact that close cases of its enforcement can be envisioned. (*Kiester*, at pp. 448-449.) *Williams* further stated, "Close cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." (*Williams*, at p. 306.) *Williams* stated, "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings. n" (*Ibid*.)

Applying *Williams*'s standards for vagueness to section 288.3, *Keister* concluded "[t]here is no such indeterminacy" regarding section 288.3. (*Keister*, *supra*, 198 Cal.App.4th at p. 449.) *Keister* explained its reasoning:

> "[Section 288.3] requires the defendant to contact or communicate with a minor or attempt to do so with the specific intent to commit an enumerated sex offense. (§ 288.3, subd. (a).) Those are questions of fact. Whether a defendant made the contact or communication and had the requisite intent are yes-or-no determinations, not subjective judgments. 'To be sure, it may be difficult in some cases to determine whether these clear requirements

43

have been met. "But courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred." ' " (*Keister*, *supra*, 198 Cal.App.4th at p. 449.)

Accordingly, *Keister* concluded section 288.3 was not unconstitutionally vague. (*Ibid*.)

Jacobo recognizes that *Keister* rejected a vagueness challenge to section 288.3, but nevertheless asks us to disagree with the holding in that case and instead conclude that section 288.3, subdivision (a) is unconstitutionally vague because it gives law enforcement unfettered discretion in determining whether its elements of "contact or communicate" and "with the intent to commit an offense" have been satisfied. We decline to do so. Rather, we agree with and adopt *Keister*'s reasoning and conclude section 288.3, subdivision (a) is not unconstitutionally vague. (*Keister*, *supra*, 198 Cal.App.4th at p. 449.)

IX

*Section 288.2, Subdivision (a) Does Not Violate the First Amendment*

Jacobo also contends his convictions (counts 3-6, 8-11, and 54-55) for contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a)) must be reversed because section 288.3, subdivision (a) is overbroad and violates the First Amendment to the United States Constitution. In particular, he asserts that section 288.3, subdivision (a) is unconstitutionally overbroad because it regulates content-based speech and is not narrowly tailored to serve California's compelling state interest of protecting children.

Jacobo recognizes that *Keister* rejected a First Amendment free speech challenge to section 288.3, but nevertheless asks us to disagree with the holding in *Keister* and

44

conclude section 288.3, subdivision (a) is unconstitutionally overbroad in violation of the First Amendment. We decline to do so. In *Keister*, the court rejected the defendant's assertion that a person who is sexually attracted to children violates section 288.3 anytime he or she communicates with a child. (*Keister*, *supra*, 198 Cal.App.4th at p. 449.) Rather, the court noted "[t]he only time the communication is criminal is if it is motivated by a specific intent to commit an enumerated sex crime." (*Ibid*.) *Keister* further stated:

> "While there is a limit on free speech to the extent that section 288.3 criminalizes otherwise protected communications with a minor, the statute has been written in a way that does not unconstitutionally restrict protected speech. Before the statute is violated, the defendant must know or reasonably should have known the other person was a minor, have the specific intent to commit an enumerated sex offense, and then contact or communicate with that minor or attempt to do so. (§ 288.3, subd. (a).)" (*Keister*, *supra*, 198 Cal.App.4th at pp. 449-450.)

Accordingly, *Keister* rejected the defendant's First Amendment challenge to section 288.3, subdivision (a). We agree with and adopt *Keister*'s reasoning and conclude section 288.3, subdivision (a) is not unconstitutionally overbroad and does not violate the right to free speech under the First Amendment. (*Keister*, *supra*, 198 Cal.App.4th at pp. 449-450; cf. *Hsu*, *supra*, 82 Cal.App.4th at pp. 988-989 [concluded section 288.2 does not violate First Amendment right to free speech].)

## X

### *Section 654*

Jacobo contends section 654 precludes his punishment for both his aggravated human trafficking offenses committed against four of the minors and the sex offenses he

committed against those four minors. He argues that because those sex offenses were committed as part of the same indivisible course of conduct with the same objective as the aggravated human trafficking offenses committed against those four minors, section 654 bars punishment for both and the sentences for those sex offenses must be stayed.

A

The trial court sentenced Jacobo to 15 years to life in prison for his conviction for aggravated human trafficking committed against G.M. (count 18). The court also imposed sentences for the sex offenses he committed against G.M.: (1) a consecutive term of eight months for oral copulation (count 19); (2) a concurrent term of two years for unlawful sexual intercourse (count 20); and (3) a concurrent term of two years for sexual penetration (count 21).

The trial court sentenced Jacobo to 15 years to life in prison for his conviction for aggravated human trafficking committed against A.C. (count 29). The court also imposed sentences for the sex offenses he committed against A.C.: (1) a consecutive term of eight months for oral copulation committed on June 17, 2014 (count 30); and (2) a consecutive term of eight months for oral copulation committed on July 26, 2014 (count 31).

The trial court sentenced Jacobo to 15 years to life in prison for his conviction for aggravated human trafficking committed against S.M. (count 38). The court also imposed sentences for the sex offenses he committed against S.M.: (1) a consecutive term of eight months for unlawful sexual intercourse (count 39); (2) a concurrent term of

two years for each of three convictions for oral copulation (counts 40-42); and (3) a concurrent term of two years for sexual penetration of a minor (count 43).

The trial court sentenced Jacobo to 15 years to life in prison for his conviction for aggravated human trafficking committed against Y.C. (count 56). The court also imposed a consecutive term of one year for unlawful sexual intercourse committed against Y.C. (count 57).

B

Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but *in no case shall the act or omission be punished under more than one provision*." (Italics added.) Section 654 prohibits only multiple punishment, not multiple convictions, for the same act. (*People v. Britt* (2004) 32 Cal.4th 944, 951 (*Britt*).)

The California Supreme Court has stated, "The test for determining whether section 654 prohibits multiple punishment has long been established: 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.] A decade ago, we criticized this test but also reaffirmed it as the established law of this state. [Citation.] We noted, however, that cases have sometimes found separate objectives when the objectives were either (1) consecutive even if similar or (2) different even if simultaneous. In those cases, multiple

47

punishment was permitted. [Citation.] . . . [¶] Section 654 turns on the *defendant's* objective in violating both provisions . . . ." (*People v. Britt*, *supra*, 32 Cal.4th at pp. 951-952.)

Importantly, under section 654 "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11 (*Beamon*).) Therefore, "[i]f the offenses were committed on different occasions, they may be punished separately." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253 (*Kwok*).) "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935 (*Gaio*).)

In cases involving sex offenses, "[e]ven where the defendant has but one objective—sexual gratification—section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished. [Citations.] [¶] [S]ection 654 does not apply to sexual misconduct that is 'preparatory' in the general sense that it is designed to sexually arouse the perpetrator or the victim." (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006 (*Alvarez*).)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to

the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).)

C

At sentencing, the trial court implicitly concluded section 654 did not apply to any of Jacobo's offenses. By imposing consecutive or concurrent terms for all of the sex offenses he committed against each of the four minors (G.M., A.C., S.M., and Y.C), the trial court implicitly found Jacobo had a separate intent and objective in committing those offenses from his intent and objective in committing the aggravated human trafficking offenses against those four minors. Based on our review of the record, we conclude there is substantial evidence to support the court's conclusion that section 654 did not apply to bar multiple punishment for Jacobo's aggravated human trafficking offenses and his sex offenses committed against G.M., A.C., S.M., and Y.C. (*Jones*, *supra*, 103 Cal.App.4th at p. 1143.) The record shows that each of Jacobo's aggravated human trafficking offenses were committed at separate times (and at separate places) from the sex offenses he committed against G.M., A.C., S.M., and Y.C.

The trial court reasonably could infer that because of that temporal separation, Jacobo had the opportunity to reflect and form a new intent, or renew his intent, before subsequently committing the sex offenses against those four minors. (*Beamon*, *supra*, 8 Cal.3d at p. 639, fn. 11; *Kwok*, *supra*, 63 Cal.App.4th at p. 1253; *Gaio*, *supra*, 81 Cal.App.4th at p. 935; cf. *People v. Hicks* (2017) 17 Cal.App.5th 496, 515 [§ 654 did not apply because of temporal separation between aggravated human trafficking offenses

49

and subsequent sex offenses].)  The court also reasonably could find that Jacobo's aggravated human trafficking offenses were merely preparatory to his subsequent sex offenses and were not incidental to or the means by which those sex offenses were accomplished.  (*Alvarez*, *supra*, 178 Cal.App.4th at p. 1006.)  Because the court reasonably could infer that Jacobo harbored multiple criminal intents and objectives independent of each other, we conclude section 654 does not bar punishment for both the aggravated human trafficking offenses he committed against the four minors and the sex offenses he committed against those four minors.  (*Britt*, *supra*, 32 Cal.4th at pp. 951-952.)  To the extent Jacobo cites evidence or inferences therefrom that would have supported a contrary conclusion, he misconstrues and/or misapplies the substantial evidence standard of review.  (*Jones*, *supra*, 103 Cal.App.4th at p. 1143.)

## DISPOSITION

The defendant's convictions on counts 32, 44, 45, 46, 58, and 59 for sending harmful matter depicting a minor engaged in sexual conduct to a minor (§ 288.2, subd. (a)(1)) are reduced to convictions for sending harmful matter to a minor (§ 288.2, subd. (a)(2)).  In all other respects, the judgment is affirmed.  The matter is remanded to the superior court for resentencing on counts 32, 44, 45, 46, 58, and 59 consistent with this opinion.

HALLER, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.